STATE OF MINNESOTA *ex rel.* E. H. BLAISDELL *vs.* JOHN S. BILLINGS, SHERIFF.

Submitted on appellant's brief Nov. 23, 1893. Affirmed Dec. 13, 1893.

No. 8373.

**Practice on Habeas Corpus.**

Upon the return to a writ of habeas corpus by the officer in whose custody the person required to be produced is held, the petitioner may plead to the same, and if he fails to do so the case must be determined upon the return; and, if it appears thereby that the party is detained

by virtue of a warrant, the question of the lawfulness of such detention
must depend upon the validity of such warrant. But in such case the
officer can only inquire whether the process is void because of jurisdic-
tional defects.

**Warrant of commitment to State Hospital for Insane..**

Where a warrant of commitment to an asylum for insane issued under
Probate Code, ch. 14, shows on its face that the party alleged to be
insane, and ordered committed, was so found by the Probate Judge on
the certificate and recommendation of "two examiners in lunacy," instead
of a finding of insanity by the jury after due examination, as directed by
the statute, *held*, that the warrant was void on its face, and the party
properly discharged from custody.

**Practice on information of insanity.**

The practice upon such examinations considered.

ON REARGUMENT.

Argued by relator,. submitted on brief by appellant, Jan. 17, 1894.  Affirmed
Jan. 25, 1894.

**Due process of law.**

"Due process of law" requires an orderly proceeding, adapted to the
nature of the case, in which the citizen has an opportunity to be heard,
and to defend, enforce, and protect his rights. A hearing, or an oppor-
tunity to be heard, before judgment, is absolutely essential.

**Laws 1893, ch. 5, in part unconstitutional.**

Certain sections of Laws 1893, ch. 5, which prescribe the course of
procedure, and authorize the commitment of persons to public or state,
and to private, hospitals for the insane, are invalid because in conflict
with those provisions of the State and the Federal constitutions which
forbid that any person shall be deprived of his life, liberty, or property
without "due process of law."

Appeal by John S. Billings, Sheriff of Otter Tail County, from
an order of the District Court of that County, made by *R. H. Mar-
den*, Court Commissioner, June 26, 1893, discharging from his custody,
Maria J. Blaisdell.

On June 3, 1893, an information was filed in the Probate Court
of Otter Tail County, stating that Maria J. Blaisdell of Pelican
Rapids in that County was then insane and needing care and treat-
ment and that it was dangerous for her to be at large.  Davis Bur-
bank, Judge of that Court, made an order directing F. Ray and J. H.
Corliss, two practising physicians of that county, to act with him
to constitute a jury to examine Mrs. Blaisdell and ascertain the

fact of sanity or insanity. They made examination and reported June 7, 1893, that she was insane and the Probate Court thereupon made an order June 9, 1893, committing her to the care and custody of the Superintendent of the State Hospital for insane at St. Peter and issued a warrant to John S. Billings, Sheriff, authorizing him to convey her to that Hospital. Under this warrant she was arrested and the Sheriff was about to start with her for St. Peter, when her son, E. H. Blaisdell, petitioned the Court Commissioner of that County for and obtained a writ of *habeas corpus* commanding the Sheriff to produce Mrs. Blaisdell together with his authority for her detention before the Commissioner on June 19, 1893, at his office in Fergus Falls to receive what should then and there be considered concerning her. The sheriff made return and set forth his warrant and produced all the proceedings in the Probate Court. The Commissioner adjudged that Mrs. Blaisdell was unlawfully detained and directed that she be discharged. From this determination the Sheriff appeals.

*M. J. Daly* and *E. E. Corliss,* for appellant.

*Houpt & Baxter* and *S. L. Pierce,* for the relator.

VANDERBURGH, J. A writ of *habeas corpus* was issued by the court commissioner of Otter Tail county to the sheriff of that county, commanding that officer to bring before him one Maria J. Blaisdell, represented to be in his custody, in order that due inquiry might be made into the cause and legality of her detention. The sheriff' made due return that he held her in custody by virtue of a warrant of the Judge of Probate of the county, ordering her to be committed to the State Hospital for the Insane at St. Peter, and produced the original warrant.

The statute (1878 G. S. ch. 80, § 43) provides that the party brought before such officer may traverse the material facts in the return, or may allege any new matter to show that his imprisonment or detention is unauthorized, and thereupon such officer is to proceed in a summary way to hear such proof as might be presented in support or in opposition to such detention.

In this case, however, there was no pleading on the part of the petitioner to the return of the officer, and there were therefore no issues of fact for the court to try and determine upon evidence, and

the commissioner had no authority to receive or act upon evidence in the case outside of the return. Nor had he any authority, upon *habeas corpus,* to review the findings of the Probate Court, further than to inquire into questions of jurisdiction, nor to enter upon a re-examination of the question of insanity, upon evidence produced before him. Such officer can exercise no appellate jurisdiction, nor consider any errors or irregularities in the proceedings, judgment, or process of any competent court having jurisdiction. He can only inquire whether the judgment or process complained of is invalid because without or in excess of jurisdiction. *State ex rel.* v. *Sheriff of Hennepin Co.,* 24 Minn. 91. In this connection, it is proper to state that the provision in 1878 G. S. ch. 80, § 25, which denies the writ of *habeas corpus* to any person detained by virtue of the process or judgment of any competent tribunal clearly has no application to judgments or process void for jurisdictional defects. This provision, which is found in the statutes of other states, has a well-defined construction and meaning; and the accepted doctrine is enunciated in *People* v. *Liscomb,* 60 N. Y. 591: "A party held only by virtue of a judgment void for want of jurisdiction, or by reason of the excess of jurisdiction, is not put to his writ of error, but may be released upon *habeas corpus.*

It will not answer to say that a court having power to give a particular judgment can give any judgment, and that a judgment not authorized by law, or contrary to law, must be corrected by error. This would be trifling with the law, the liberty of the citizen, and the protection thrown about his person by the bill of rights and the constitution, and creating a judicial despotism. It would be to defeat justice, and nullify the writ of *habeas corpus* by the merest technicality, and the most artificial process of reasoning."

Upon the record before us, for reasons already stated, the only question open to the commissioner arose upon the return, and relates to the validity and sufficiency of the warrant under which the party was held. Before calling special attention to the form or terms of the warrant, however, it will be proper to refer briefly to the provisions of the statute in reference to the examination and commitment of insane persons. These provisions are found in the Probate Code, ch. 14. They are brief and summary in their character,

though an improvement in some respects upon the provisions of the General Statutes superseded by the Code. See *Knox* v. *Haug,* 48 Minn. 60, (50 N. W. 934.) It is therefore all the more important, in order to secure proper safeguards for the rights and liberty of persons alleged to be insane, that the directions of the statute be carefully followed.

Upon information filed, provision is made for bringing the party before the Probate Court, and thereupon the court is required to make an order directed to two reputable persons, one of whom is to be a duly-qualified physician; and such persons, in connection with the Probate Judge, shall constitute a jury "to examine the person alleged to be insane, and they shall ascertain the fact of sanity or insanity."

The persons designated in the order are required to take the prescribed oath before proceeding to the examination. Provision is also made for the examination of witnesses on both sides; and when the examination is ended "the jury shall forthwith make report of their findings in writing, which shall be filed in the Probate Court; their finding shall be that the person is 'sane' or 'insane.'" And if the person so examined is found to be insane the Probate Court shall order him to be committed, etc., and in such order shall direct that warrants be issued to the sheriff or other suitable person, who shall be authorized to convey such person to the hospital designated. It will be seen that the examination is to be conducted in the presence of the party, and to be by and in the presence of the jury, and that the party, or those representing him, must be allowed to take part in it, and to offer proper testimony in opposition to the information. And the examiners and judge must act as a committee or "jury" throughout, until the examination is completed, and finding made and filed.

It is obvious that the special finding in writing must be the act of "the jury," based upon the examination and inquiry by and in the presence of the jury, and not the act of the Judge, based in whole or in part on the report or recommendation of the examiners.

The statute requires that a specified series of questions shall be propounded and answered in the course of the examination of a person alleged to be insane, a copy of which is to be sent to the superintendent of the hospital for his information. But this is by

no means to constitute the sum of the examination, though part of the duties of the examiners in connection with it. The examination and finding are under the sanction of an oath. The jury must be satisfied upon such examination, including that of the patient and of the witnesses sworn in the case, of his insanity, before such finding can be reached, and in the conduct of the examination by the members of the jury, and to aid them in their deliberation and decision they are entitled to the professional skill and experience of the medical expert on the jury, as applied to the symptoms and evidence disclosed by the examination.

In this case the warrant under which the sheriff justifies is as follows:

"State of Minnesota, County of Otter Tail, ss.: Office of the Judge of Probate of said county. To the Superintendent of the St. Peter State Hospital: On the receipt of the certificate of two duly-qualified examiners in lunacy, appointed by me, certifying to the insanity of Maria J. Blaisdell, of Pelican Rapids, Minnesota, and recommending her commitment to a hospital for the insane, and having caused her to be fully informed of the proceedings taken in her case, and having (here state whether he personally saw alleged insane person, or took any further testimony) personally seen Mrs. Blaisdell, and taken further testimony in the case, it appears to me, upon full consideration of the certificate of the examiners, and other evidence, that Maria J. Blaisdell is insane, and a proper subject for custody and treatment in a hospital for the insane; and I so find, and hereby approve said examiners' certificate. Therefore, it is ordered that Maria J. Blaisdell be committed to the St. Peter State Hospital, there to be detained until discharged according to law. Davis Burbank, Judge of Probate."

In the absence of any other material or competent evidence, the decision of this case must turn exclusively upon the validity of this warrant. It will be observed that it is not a simple warrant of commitment, in the statutory form, but it also includes recitals of the order of the Judge, and the nature of the procedure and evidence on which it is based. These recitals are at least *prima facie* evidence of the facts, and show a clear departure from the requirements of the statute. It appears that the Judge determined the question upon the certificate of the examiners and other evidence, and there-

upon found the party insane. It needs no argument to show that this was not the finding of the jury required by the statute.

The warrant, therefore, on its face, appears to be wholly void and without jurisdiction, and the decision and order of the commissioner, though based by him on wrong reasons, were nevertheless correct, and must be affirmed.

(Opinion published 57 N. W. Rep. 206.)

---

COLLINS, J. Upon reargument, January 17, 1894. At the former hearing of this case the attention of the court was not called to the fact that the provisions of the Probate Code (Laws 1889, ch. 46, subch. 14) relating to the commitment of insane persons to the state hospitals had been wholly superseded by certain sections of Laws 1893, ch. 5. Assuming that the provisions of the Probate Code on this subject were still in force, the court fell into the error of holding that the law had not been complied with, that there had been a complete departure from the requirements of the statute, and that the warrant under which Mrs. Blaisdell had been committed was on its face wholly void, and without jurisdiction. The inevitable result was the granting of respondent's petition for a rehearing. A question new to the case, and of the greatest importance, has now been raised by counsel for relator, namely, the constitutionality of those provisions in Laws 1893, ch. 5, which prescribe the course of procedure, and authorize the commitment of persons to public and to private hospitals for the insane. It is urged that these provisions violate the fourteenth amendment to the Federal constitution, and are in conflict with a similar article in our State constitution, forbidding that any person shall be deprived of his life, liberty, or property without due process of law. We have therefore to examine the provisions of the statute of 1893 in the light of adjudications as to what is, and what constitutes, "due process of law," in order to discover and determine whether constitutional rights have been encroached upon and invaded by means of this legislative enactment.

The first inquiry is as to what is "due process of law." In *Bardwell* v. *Collins*, 44 Minn. 97, (46 N. W. 315,) it was said that no complete or exhaustive definition of the term had ever been attempted

by the courts, because it was incapable of any such definition. All that could be done was to lay down certain general principles, and apply them to the facts of each case as they arise. Mr. Webster's exposition of the words, "law of the land," and "due process of law," viz.: "The general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial," —was quoted; and then the court went on to say that, in judicial proceedings, "due process of law" requires notice, hearing, and judgment. These words, said the court, do not mean anything which the legislature may see fit to declare to be "due process of law," for there are certain fundamental rights which our system of jurisprudence has always recognized, which not even the legislature can disregard, in proceedings by which a person is deprived of life, liberty, or property, and one of these is "notice before judgment in all judicial proceedings." In commenting upon the difficulty of defining these words, it has been said that it is wisdom to leave the meaning to be evolved by the gradual process of judicial inclusion and exclusion, as the case presented for decision shall require. *Davidson* v. *New Orleans,* 96 U. S. 104. But it may be stated generally that due process of law requires that a party shall be properly brought into court, and that he shall have an opportunity, when there, to prove any fact which, according to the constitution and the usages of the common law, would be a protection to him or to his property. *People* v. *Board of Supervisors,* 70 N. Y. 228. Due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing, or an opportunity to be heard, is absolutely essential. "Due process of law" without these conditions cannot be conceived. *Stewart* v. *Palmer,* 74 N. Y. 183.

It follows that any method of procedure which a legislature may, in the uncontrolled exercise of its power, see fit to enact, having for its purpose the deprivation of a person of his life, liberty, or property, is in no sense the process of law designated and imperatively required by the constitution. And while the state should take charge of such unfortunates as are dangerous to themselves and to others, not only for the safety of the public, but for their own amelioration, due regard must be had to the forms of law and to

personal rights.  To the person charged with being insane to a degree requiring the interposition of the authorities and the restraint provided for, there must be given notice of the proceeding, and also an opportunity to be heard in the tribunal which is to pass judgment upon his right to his personal liberty in the future.  There must be a trial before judgment can be pronounced, and there can be no proper trial unless there is guarantied the right to produce witnesses and to submit evidence.  The question here is not whether the tribunal may proceed in due form of law, and with some regard to the rights of the person before it, but, rather, is the right to have it so proceed absolutely secured?  Any statute having for its object the deprivation of the liberty of a person cannot be upheld unless this right is secured, for the object may be attained in defiance of the constitution, and without due process of law.

Let us now turn to the statute in question.  It must be observed at the outset that private, as well as public, hospitals are within its terms, and for this reason, if for no other, the rights of the citizen should be closely guarded.  Laws 1893, ch. 5, § 17, requires that every person committed to custody as insane must be so committed in the manner thereafter prescribed.  Section 19 provides that whenever the Probate Judge, or, in his absence, the court commissioner, shall receive information in writing (the form being given) that there is an insane person in his county needing care and treatment, he shall issue what is called a "commission in lunacy" (the form thereof being prescribed) to two physicians, styled "examiners in lunacy."  This section permits the filing of an information not even sworn to by anybody.  That it has opened the door to wrong and injustice—to the making of very serious and unwarranted charges against others by wholly irresponsible and evil-minded persons—is evident, although the method of instituting the proceedings does not affect the validity of the act.  The commission directs the two physicians designated, who, under section 18, must now possess certain qualifications, to "examine" the alleged lunatic, and certify to the Probate Judge or court commissioner, within one day after their examination, the result thereof, with their recommendation as to the special action necessary to be taken.  The form of this certificate and recommendation is laid down in section 20.  This certificate must be duly sworn to or affirmed before the officer issu-

ing the commission. Section 21. If (section 19) the examiners certify that the person examined is sane, the case shall be dismissed. If they disagree, the officer shall call other examiners, or take further testimony. If they certify the person to be insane, and a proper subject for commitment, for any of the reasons specified in section 17, it is made the duty of the officer to visit the alleged insane person, or to require him to be brought into court; "but he shall cause him to be fully informed of the proceedings being taken against him." If the officer deems it advisable, he may call other examiners, or take further testimony, and in all cases, "before issuing a warrant of commitment," the county attorney shall be informed, and it is made his duty to take such steps as are deemed necessary to protect the rights of such person. If satisfied that the person is insane, and that the reason for his commitment is sufficient, under the provisions of the act, the Probate Judge or the court commissioner approves the certificate of the examiners, and issues an order or warrant in duplicate, committing him to the custody of the superintendent of one of the state hospitals, or to the superintendent or keeper of any private hospital or institution for the insane, which, under the same law, has been duly licensed. This order or warrant may be executed by the sheriff or by a private individual, and through it the person named therein is placed in the custody of the superintendent or keeper to whom it may have been directed. There are some other provisions in respect to these commitments, but they have no bearing on the questions now before us, and we now reach a consideration of the controlling provisions of the statute. The commission issues to the examiners, and they are authorized and directed to "examine" the alleged lunatic. Their examination is not made under oath. It may be formal or informal, as they choose, and the person under examination may not have the slightest idea that he is the subject of inquiry or investigation. The examination may be at any place where the subject can be found, or at a place convenient for the examiners. It may be public or private, and, judging from the questions found in the form to be answered by the examiners, it may consist simply in observing the alleged lunatic, and in making inquiries of him or of his acquaintances, or, for that matter, accepting common street gossip. To illustrate: In the certificate signed by the physicians who made

this examination is the answer to a most important question, viz.: "Has the patient shown any disposition to injure others?" The answer is: "Yes. It is reported that she threatens to shoot, carries firearms, and did shoot at one person passing, not knowing whom."

When this examination, of which the subject need not be informed, and in which he takes no part, is completed, the examiners are required to make a verified written report and recommendation, and on this the officer may commit without any other or further act, except that he must see the subject, either in or out of court, informing him fully of the proceedings, and must also notify the county attorney of what is going on. Not until after the examination, report, and recommendation, upon which the officer may commit, if he so chooses, need there be any notice whatsoever to the person charged with being a proper subject for the insane asylum, nor need the county attorney be advised of the proceeding. If personal rights are of any consequence, and if they need protection at any time, such notice should precede the examination, not follow it. But, aside from this serious defect in the law, it will be seen that there is no provision which assures to the accused a trial at any time, either before or after notice, under the forms of law; no provision which guaranties to him a judicial investigation and a determination as to his sanity. The officer before whom the inquiry is pending is nowhere required to conduct his examination with the least regard to the rights of the person charged with being insane, —his right to exercise his faculties without unwarranted restraint, and to follow any lawful avocation for the support of life.

Nor is the officer obliged to hear a particle of testimony, although he is at liberty so to do. The accused or the county attorney might appear before him with an army of volunteer witnesses; but if their testimony was received or heard, or if there was the slightest approach to a trial, it would be through the grace of the officer, not as a matter of right to the person whose personal liberty is jeopardized by the proceeding. We are not speaking of what every honorable and humane officer would do when a case was before him, but of what the statute will permit an officer to do.

Further examination of this enactment need not be made, for enough has been said to establish its invalidity, and to indicate what outrages might be perpetrated under it. The objection to

such a proceeding as that authorized by this statute does not lie in the fact that the person named may be restrained of his liberty, but in allowing it to be done without first having a judicial investigation to ascertain whether the charges made against him are true; not in committing him to the hospital, but in doing it without first giving him an opportunity to be heard.

We are compelled to the conclusion that the enactment of the sections referred to is unconstitutional, because they allow and sanction a denial of the protection of the law, and the deprivation of personal liberty without due process of law. But we do not intend to intimate that in this case the upright and conscientious Judge of Probate before whom it was pending acted arbitrarily, or that he adhered to the letter of the statute, disregarding the rights or requests of Mrs. Blaisdell or her friends, when, after the examination, report, and recommendation, she appeared before him. There is nothing to indicate such a course. As we have shown, the statute is so constructed that the opportunity to be heard in defense is not guarantied to the person charged. It is not framed so as to compel a hearing before condemnation or a trial, under the general forms of law, before judgment is pronounced. Where it is plain that legislation upon any subject is in conflict with constitutional provisions, the duty of the court is obvious, and must be performed, whether the interests of a large number, or of a certain class, of people are involved, or the rights of a single citizen.

The provisions of chapter 5, *supra*, on this subject, being invalid, those which they were designed to supersede, found in the Probate Code, are in force, and must be observed. As stated in the former decision, they were not; and, as a consequence, the conclusion heretofore reached is adhered to.

(Opinion published 57 N. W. Rep. 794.)