IN RE LYDIA ANN ALLEN.

May Term, 1909.

Present: MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 6, 1909.

*Constitutional Law—Due Process of Law—Restraint of Insane Person—Inquisitions—Evidence—Probate Court—Jurisdiction—P. S. 3716-3718—Construction—Certificate of Physicians as to Insanity—Nature and Effect—Presumptive Evidence—Power of Legislature—Statutes—Construction in Favor of Validity—Habeas Corpus—Jurisdiction of Court.*

At common law a dangerously insane person may be temporarily restrained without legal process pending the institution of judicial proceedings for the determination of his mental condition, and such restraint infringes no constitutional provision; but where such confinement is permanent, due process of law requires that it be only in pursuance of a judgment of a court of competent jurisdiction, after due notice to such person and an adequate opportunity to defend.

Though P. S. 3716-3718, providing for the commitment by the probate court of an insane pauper to the hospital for the insane, contains

no express provision for notice of the proceedings to such person, yet it must be read in the light of the common law which requires notice to the alleged insane before a legal order for his commitment can be made, and an opportunity to be present at the inquiry and defend, and when so construed the statute does not violate the constitutional requirement of due process of law.

The certificates of physicians prescribed by P. S. 3753-3756, providing for physicians' certificates of insanity for the admission of persons to insane hospitals, do not have the force of a judicial determination of the status of the alleged insane person, for they are the result of a proceeding devoid of due process of law, as the physicians act without authority from any court and their examination may be made without notice to or knowledge by the alleged insane person, and they base their certificate solely on such examination without hearing any evidence offered by the alleged insane person; and, though the presence of such certificate is essential to the jurisdiction of the judge of probate under P. S. 3716-3718, providing for a court of inquiry for the commitment of insane paupers to the state hospital for the insane, yet in that proceeding such certificate is only *prima facie* evidence of insanity.

Under P. S. 3716-3718, providing for a court of inquiry for the commitment of insane paupers to the hospital for the insane, the judge of probate acts judicially, and he cannot issue an order of removal without having found the requisite jurisdictional facts, and he must find on competent evidence not only that the alleged insane person is destitute and without relatives bound by law to support him, but he must also find that such person is dangerous as well as insane, since P. S. 3759 provides that demented persons who are not dangerous shall not be confined in a hospital for the insane.

An inquisition of lunacy is only presumptive evidence of insanity, and is traversable as a matter of right by the alleged lunatic, and may be sent to a court of common law to be tried by jury.

It is within the power of the Legislature to provide that the certificate of physicians required by P. S. 3753-3756 shall be received as evidence of insanity, and prescribe its effect, in proceedings to determine the question of insanity, with the modification that it has no power, under the pretence of prescribing rules for the presentation of evidence, to preclude the alleged insane person from establishing his rights in opposition thereto.

Where there are two equally obvious constructions of a statute, one of which will render it unconstitutional, the court must adopt the one in harmony with the constitution.

The judge of probate has no power to act under P. S. 3716-3718, providing for a court of inquiry for the commitment of insane paupers to the state hospital for the insane, before reasonable notice has been given to the alleged insane pauper.

The probate court is one of special and limited jurisdiction, and it can proceed under P. S. 3716-3718, providing for the commitment of insane paupers, only in strict conformity to the statute, and the record in such proceedings culminating in an order for the removal of an insane pauper to the state hospital for the insane must show the jurisdictional facts, or the order is void.

The right of appeal to the probate court given by No. 94, Acts 1908, amending P. S. 3757, from the decision of physicians certifying to the insanity of a person, with the right to a trial by jury, and providing that any person detained in a hospital when the Act took effect should be entitled to such appeal, has no application where before the passage of the Act an insane person was committed to the state hospital for the insane as an insane pauper by order of a judge of probate, in proceedings under P. S. 3715-3719, for in such case the commitment and detention are not on the certificate of physicians, but by order of the judge of probate.

Where, in a habeas corpus proceeding, it appears that a person is dangerously insane but is illegally confined in a hospital for the insane, it is the duty of the court, and within its common-law power arising from public necessity, to restrain him until resort can be had to proper means to place him under permanent legal restraint.

Where, in habeas corpus for the discharge of a person illegally confined in the state hospital for the insane as an insane pauper, the record gives no information of his mental condition, the court, under its common-law jurisdiction over lunatics, may determine on its own information whether such person is insane and dangerous, and, if it has reason to believe that he is, it may temporarily restrain him pending regular proceedings to place him under permanent legal restraint.

HABEAS CORPUS, brought to the Supreme Court for Lamoille County at its May Term, 1909, and then heard on the pleadings. The opinion states the case.

*F. S. Rogers* for the relator.

The statute under which the relator was committed is void because in violation of the requirements of due process of law. That statute makes no provision for notice of the proceedings to the alleged insane person. The statute must expressly provide for such notice. *Stearns* v. *Barre,* 73 Vt. 281; *Johnson* v. *Joliet etc. R. R.,* 23 Ill. 202; *Stuart* v. *Palmer,* 74 N. Y. 183; *Rees* v. *Watertown,* 19 Wall. 107; *Louisville R. R. Co.* v. *Schmidt,* 77 U. S. 230.

In such matters the probate court is one of limited jurisdiction, and, therefore, all jurisdictional facts must appear on the face of the record. Roberts' Digest, p. 564, pl. 2; *Holden* v. *Scanlin,* 30 Vt. 177; *Clapp* v. *Beardsley,* 1 Aik. 168; *Shumway* v. *Shumway,* 2 Vt. 339; *Walbridge* v. *Hall,* 3 Vt. 114; *Nye* v. *Kellam,* 18 Vt. 594; *Hutchins* v. *Johnson,* 12 Conn. 376, 30 Am. Dec. 622; *Chase* v. *Hathaway,* 14 Mass. 222; *Wait* v. *Maxwell,* 5 Pick. 217, 16 Am. Dec. 392.

The record shows that no notice was given either by physicians or probate court of hearing. This is a fatal defect. *Shumway* v. *Shumway,* 2 Vt. 339; *Allis* v. *Morton,* 4 Gray 63, 16 Am. Dec. 392; *Hutchins* v. *Johnson,* 12 Conn. 376, 30 Am. Dec. 622; *McCurry* v. *Hooper,* 12 Ala. 823, 46 Am. Dec. 280; 16 Rhode Island 537, 27 Am. St. Rep. 759; *McGee* v. *Hays,* 127 Cal. 336, 78 Am. St. Rep. 57, 23 L. R. A. 737; note in 23 L. R. A. 737.

*John G. Sargent,* Attorney General, for the State.

WATSON, J. It appears from the complaint and the respondent's return that Lydia Ann Allen was committed to the Vermont State Hospital for the Insane at Waterbury on the 17th day of October, 1906, by virtue of an order of removal made by the judge of probate for the district in which she lives, as an insane state pauper, and the certificate of two physicians as to her insanity was left with the respondent as superintendent of said hospital by the authorized person executing the order and in connection therewith; and that by virtue of said order and the certificate of the physicians, and not otherwise, she hitherto has been and now is there detained.

It is alleged in the complaint that the said Lydia Ann has never had any hearing nor notice of any hearing on the question

of her insanity, nor on the question of her removal and commitment to the hospital and confinement therein; and that all proceedings under which she was thus committed and is now detained are illegal, unconstitutional, and void. No claim is made but that the certificate of insanity was made by legally qualified physicians and upon an examination made by them, in accordance with the specific provisions of the statute under which they acted; but it is said that those provisions do not answer the requirements of due process of law guaranteed by the Constitutions of this State and of the United States.

By P. S. 3753, no person except as provided in Chapter 167 shall be admitted to or detained in a hospital for the insane as a patient or inmate except upon the certificate of such person's insanity made by two legally qualified physicians, residents of this State. The certificate shall contain a statement that the physicians making the same are each legally qualified to practice as a physician in the State, and the reasons for adjudging such person insane. By sec. 3754, the physicians shall subscribe and make oath to the certificate before a magistrate authorized to administer oaths. The magistrate shall append thereto his jurat and certify therein that the physicians are of unquestionable integrity and skill. By sec. 3755, the certificate shall be made and sworn to not more than ten days before the admission of the insane person to the hospital for the insane, unless a longer time is required to dispose of an appeal taken from the decision of the physicians as provided by law, and shall be in the hands of the proper officer of the hospital at the time the insane person is received therein. By sec. 3756, the certificate of the physicians shall be given only after a careful examination of the supposed insane person made not more than five days previous to making the certificate.

As seen this statute requires the physicians to make a careful examination of the supposed insane person within a specified time before giving a certificate, but it contains no provision for prior notice to such person, and there would seem to be no difficulty in making an examination requisite to a certificate in compliance with the requirements of the statute without any knowledge or suspicion by the one under examination as to what is being done, or the purpose of it. An appeal from the decision of the physicians to the board of supervisors of the insane could

24

be had by the next friend or relative of the person whose insanity was so certified (P. S. 3757), but no right of appeal was given to such person, nor was there any provision explicitly requiring the examination of the case by the appellate board to be on notice to him, nor in his presence, when an appeal was taken by one having such right. No appeal was taken in this instance, consequently that particular portion of the statute is material here only as it is a part of the whole involved and necessarily examined in the proper solution of the constitutional question presented.

By P. S. 3715, insane persons in a town, destitute of means to support themselves, and without relatives in the State bound by law to support them, shall, while in a hospital for the insane, be supported by the State. By sec. 3716, the selectmen of such town shall on application of the overseer of the poor, ascertain whether such insane person is liable to be supported by the State, and may institute a court of inquiry before the judge of probate of the district in which the town is situated, giving at least ten days' notice thereof to the state's attorney of the county. By sec. 3717, the state's attorney or, in case he is unable to attend, an attorney appointed by the probate court, shall investigate the case; and if he finds that the insane person is not liable to be supported by the State, he shall attend the court of inquiry and produce at the expense of the State such witnesses and testimony as he deems advisable for the protection of the rights of the State. By sec. 3718, "if the judge of probate finds from the evidence that such insane person is liable to be supported by the state, as aforesaid, and the insanity of such person is certified in writing, duly sworn to, by two legally qualified physicians, residents of this state, he shall issue an order for the removal of such insane person to the Vermont state hospital for the insane at Waterbury or to the Brattleboro retreat at Brattleboro, to be there supported." By sec. 3719, an officer or other person appointed by the judge of probate shall remove such insane person to said hospital or retreat, and leave with the superintendent or one of the trustees thereof a copy of such order, with his return thereon, and also the certificate of the two physicians as to the insanity of such person, which shall be a sufficient warrant for receiving him therein.

It will be observed that when a court of inquiry is instituted under the statutory provisions above given, the only notice in terms required is to the state's attorney of the county, and his duties in the premises pertain solely to the protection of the rights of the State. The statute is silent regarding notice to the alleged incompetent, than whom from a legal point of view no one can have a greater interest in the matters and things there to be heard and determined. Thus securing his confinement in the hospital for the insane, as an insane state pauper, may be at the request of loving friends and relatives prompted by honest intentions and by considerations looking to the most humane and beneficial treatment that can be given to an unfortunate of that class, or it may be part of a scheme by those seeking to get rid of him personally, or to deprive him of his just property rights, or as relatives to avoid the statutory liability for support, concerning the facts of which his knowledge would to them be most damaging and perhaps sufficient to thwart their sinister intent and purpose altogether if he be given sufficient notice and an adequate opportunity to defend.

At common law an insane person may be temporarily restrained without legal process, and if need be in an asylum, if his going at large would be dangerous to himself or to others, preliminary to the institution of judicial proceedings for the determination of his mental condition, and such a restraint does not violate any constitutional provision. *Colby* v. *Jackson,* 12 N. H. 526; *Keleher* v. *Putnam,* 60 N. H. 30, 49 Am. Rep. 304; *Porter* v. *Ritch,* 70 Conn. 235, 47 L. R. A. 353, 39 Atl. 169; *Look* v. *Deen,* 108 Mass. 116, 11 Am. Rep. 323. When, however, as in the case at bar, the confinement is permanent in nature, the person thus confined is deprived of his liberty which, in order to be lawful, must be in pursuance of a judgment of a court of competent jurisdiction, after such person has had sufficient notice and an adequate opportunity to defend. It is no answer to say the person is insane and consequently notice to him will be useless, for that is assuming as a fact the very thing in question and which is presumed to be otherwise until proved. Such notice and opportunity are required by the Constitution of this State, Art. 10, wherein it reads: "Nor can any person be justly deprived of his liberty except by the laws of the land, or the judgment of his peers"; and by the Fourteenth Amendment to

the Federal Constitution, that no state shall "deprive any person of life, liberty, or property, without due process of law." *Louisville & Nashville R. R. Co.* v. *Schmidt*, 177 U. S. 230, 44 L. ed. 747, 20 Sup. Ct. 620; *Simon* v. *Craft*, 182 U. S. 427, 45 L. ed. 1165, 21 Sup. Ct. 836; *McCurry* v. *Hooper*, 12 Ala. 823, 46 Am. Dec. 280; *In re Lambert*, 134 Cal. 626, 66 Pac. 851, 86 Am. St. Rep. 296; *Supreme Council R. A.* v. *Nicholson*, 104 Md. 472, 65 Atl. 320, 10 Am. & Eng. Ann. Cas. 213; *Chase* v. *Hathaway*, 14 Mass. 222; *Hathaway* v. *Clark*, 5 Pick. 490; *Evans* v. *Johnson*, 39 W. Va. 299, 23 L. R. A. 737, 19 S. E. 623, 45 Am. St. Rep. 912; *State* v. *Billings*, 55 Minn. 467, 57 N. W. 206, 43 Am. St. Rep. 525; *Doyle, Petitioner*, 16 R. I. 537, 18 Atl. 159, 5 L. R. A. 359, 27 Am. St. Rep. 759.

As before seen the statute in question contains no specific provision for notice to the alleged insane person of the institution of proceedings for a court of inquiry to ascertain whether he shall be removed to the hospital for the insane as a state charge. Yet it does not follow that the statute is wanting in due process of law. In *Rex* v. *Benn*, 6 T. R. 198, *Lord Kenyon*, C. J., said, "It is an invariable maxim in our law that no man shall be punished before he has had an opportunity of being heard." And the same principle is stated in *Harper* v. *Carr*, 7 T. R. 270, and in *Reg.* v. *Simpson*, 10 Mod. 375. In *Mead* v. *Deputy Marshal*, 1 Brock. 324, Chief Justice Marshall said: "It is a principle of natural justice, which courts are never at liberty to dispense with, unless under the mandate of positive law, that no person shall be condemned unheard, or without an opportunity of being heard." And Mr. Bishop, in his work on the Written Laws, after stating this same common law rule, says: "Therefore a statute will not be interpreted, unless its words are specific requiring it, to authorize judicial proceedings without notice to the party to be affected by them."

The case of *Chase* v. *Hathaway*, to which reference has been made, was an appeal from the decree of the judge of probate appointing Hathaway to be guardian of Chase, found to be a person *non compos mentis*. The proceedings of the judge of probate were founded upon a return of an inquisition, made by the selectmen of the town of which the incompetent was an inhabitant. The inquisition was taken pursuant to a commission from the judge of probate, issued according to a certain statute.

There was no provision in the statute for notice to the party in such proceedings, and he had none from the selectmen of the time and place appointed by them to make their inquiry, nor from the probate office of the return of the commission, or of the time assigned by the judge for considering and acting upon it. The want of notice was among the reasons assigned for the appeal. Thereon the court said that notwithstanding the silence of the statute in regard to notice to the party, no decree of a probate court, so materially affecting the rights of property and the person, can be valid, unless the party to be affected has had an opportunity to be heard in defence of his rights. ''It is a fundamental principle of justice, essential to every free government, that every citizen shall be maintained in the enjoyment of his liberty and property, unless he has forfeited them by the standing laws of the community, and has had opportunity to answer such charges as, according to those laws, will justify a forfeiture or suspension of them. And whenever the Legislature has provided that, on account of crime or misfortune, the public safety or convenience demands a suspension of these essential rights of the individual, and has provided a judicial process, by which the fact shall be ascertained, it is to be understood as required that the tribunal, to which is committed the duty of inquiring and determining, shall give opportunity to the subject to be heard in support of his innocence or his capacity.'' In *Evans* v. *Johnson,* 39 W. Va. 299, 19 S. E. 623, 23 L. R. A. 737, 45 Am. St. Rep. 912, it is said: ''Often if given notice, he (the alleged insane person) will be prompt to attend, and in his person be the unanswerable witness of his sanity; often, if not given notice, those interested in using or robbing him of his property will effectuate a corrupt plan. Almost as well might we convict a man of crime without notice. There is abundant authority for this position. Even though the statute be silent as to notice, as ours as to appointment of committees by county courts is, though that as to circuit court appointment requires notice, yet the common law steps in and requires it.'' That this rule is commonly thus applied in the construction of statutes similar in nature to the one under consideration is seen from the following cases: *Hathaway* v. *Clark,* 5 Pick. 490; *Matter of Blewitt,* 131 N. Y. 541, 30 N. E. 587; *Supreme Council R. A.* v. *Nicholson,* 104 Md. 472, 65 Atl. 320, 10 Ann. Cas. 213; *Holman* v. *Holman,* 80 Me.

139, 13 Atl. 576; *Eddy* v. *People,* 15 Ill. 386; *Dutcher* v. *Hill,* 29 Mo. 271, 77 Am. Dec. 572; *Hutchins* v. *Johnson,* 12 Conn. 376, 30 Am. Dec. 622. And it is the party's privilege to be present. *Cranmer, Ex parte,* 12 Ves. 445; *In re Vanauken,* 10 N. J. Eq. 186; *Fiscus* v. *Turner,* 125 Ind. 46, 24 N. E. 662. See also *Simon* v. *Craft,* before cited. Further citation of authorities is unnecessary. We think it clear that the provisions for a court of inquiry, as contained in P. S. 3716-3718, should be construed in the light of the requirements of the foregoing principles of the common law, and that so construed the alleged insane person is entitled by law to proper notice of such proceedings and an opportunity to be present and defend. This is all that due process of law requires, and consequently the statute in this respect is not in violation of the Constitution of the State, nor of the Fourteenth Amendment to the Constitution of the United States.

In some states it is held that notice to the alleged lunatic may be dispensed with by special order of court in cases of peculiar circumstances, such as confirmed and dangerous madness, rendering it improper or unsafe to give such notice (see Matter of Blewitt, cited above), but as that question is not involved in the matter before us it is not considered.

Whether the proceedings had under this statute resulting in the order for the confinement of Lydia Ann in the hospital as an insane state pauper were such as rendered the restraint legal is quite another thing. The record shows that the judge of probate did not pass upon the question of her insanity, but instead thereof left it without consideration as the two physicians had placed it in their certificate. The order, after stating the court's finding that she has no relatives within this State, bound by law to support her, and is destitute of means of supporting herself, continues, "and it appearing that the insanity of the said Lydia Ann Allen is certified in writing, sworn to, by two physicians legally qualified and residents of this State, as provided by law. Whereupon, the said judge of probate doth hereby order and decree," etc.

For the purpose of making such a certificate any two legally qualified physicians, residents of the State, may be selected by those interested in having the person confined in an asylum, as insane, regardless of their actuating motives. The physicians

are required to make their examination of the person within five days before making the certificate, and to make oath to their certificate, but they are neither designated, nor appointed, nor commissioned, by any court or public authority to act in that capacity. The examination may be made by them anywhere and under any circumstances permitting it, without notice to, or knowledge by, the supposed insane person, and solely upon such examination their certificate may be based. They are not obliged to hear other evidence, even though offered by the person examined or in his behalf to show his sanity, and if they do hear evidence so offered it is as a mere matter of favor on their part. Such a proceeding is entirely devoid of the essential elements of due process of law. Moreover, if a person's right of hearing depends upon the grace, favor, or discretion of the persons, board, or tribunal whose duty it is to decide the question at issue, he is not protected in his constitutional right. The law must require notice to him, give him a right to a hearing, and an opportunity to be heard. *Durkee* v. *City of Barre,* 81 Vt. 530, 71 Atl. 819; *Stuart* v. *Palmer,* 74 N. Y. 183, 30 Am. Rep. 289; *Underwood* v. *People,* 32 Mich. 1, 20 Am. Rep. 633; *In re Lambert,* 134 Cal. 626, 66 Pac. 851, 55 L. R. A. 856, 86 Am. St. Rep. 296; *State* v. *Billings,* 55 Minn. 476, 57 N. W. 206, 43 Am. St. Rep. 525.

Such a certificate of physicians, when used before a court of inquiry under section 3718, cannot therefore have the force of a judicial determination by which the state of the person's mind is fixed, nor does the law contemplate that it shall have such effect. By that section if the court finds from the evidence that the person is liable to be supported by the State, and the insanity of such person is thus certified with the formalities required by law, the court shall issue an order for the removal of the insane person to the hospital for the insane, etc. The presence of such a certificate, however, is essential to the jurisdiction of the judge of probate. Without it he has no power to determine the matters and things coming before him as a court of inquiry authorized by section 3716. The clause immediately following, that ''he shall issue an order for the removal of such insane person to the'' hospital means no more than that he shall issue his order in the due course of proceedings according to law. His acts are judicial and he cannot issue an order of removal without having found the facts requisite as a basis therefor. See *Painter* v. *Liverpool*

*Oil Gas Co.,* 3 Ad. & El. 433, *Patterson,* J.; *Cleveland* v. *Hopkins,* 2 Aik. 294.

Just what force as evidence the statute contemplates that the physicians' certificate shall have in hearings of this character is a question not entirely free from doubt. The examination by the physicians is made under certain provisions of the statute, but it is not of a public nature and made under competent authority on behalf of the public to ascertain a matter of public interest. The certificate is not therefore a return of the physicians' proceedings and findings to a court to be there acted upon in affirmance or disaffirmance, as is generally done when an investigation has been made by an inquisition by virtue of competent authority. 1 Stark. Ev. Part II, secs. 94, 96, 97. Yet an inquisition of lunacy is only presumptive evidence of insanity, and is traversable as a matter of right by the alleged lunatic, and may be sent to a court of common law to be tried by jury. *Shumway* v. *Shumway,* 2 Vt. 339; *Matter of Bridge,* 1 Cr. & Ph. 338; *In re Cumming,* 1 De G., M. & G. 537. The certificate is not by law returned by the physicians to any court, public officer, or public office. It is not a warrant, nor a binding order on any one, to commit to an asylum, or to restrain, the person certified to be insane. It is but the written opinion under oath of the physicians that the person is insane and a proper subject for treatment and custody in some asylum or other institution for those so afflicted. It is however within the power of the Legislature to prescribe that such a certificate, made in full compliance with the provisions of the statute authorizing it, shall be received as evidence of insanity, and the effect of it, before a court of inquiry, like the one here under consideration, with the modification that it has no power under the pretence of prescribing rules for the presentation of evidence, to go so far as altogether to preclude the alleged insane person from establishing his rights in opposition thereto. In *Board of Commissioners* v. *Merchant,* 103 N. Y. 143, 8 N. E. 484, 57 Am. Rep. 705, the court said: "The general power of the Legislature to prescribe rules of evidence and methods of proof is undoubted. While the power has its constitutional limitations, it is not easy to define precisely what they are. A law which would practically shut out the evidence of a party and thus deny him the opportunity for a trial would substantially deprive him of due process of law. It would not be pos-

sible to uphold a law which made an act *prima facie* evidence of crime over which the party charged had no control and with which he had no connection, or which made that *prima facie* evidence of crime which had no relation to a criminal act and no tendency whatever by itself to prove a criminal act. But so long as the Legislature, in prescribing rules of evidence, in either civil or criminal cases, leaves a party a fair opportunity to make his defence and to submit all the facts to the jury to be weighed by them, upon evidence legitimately bearing upon them, it is difficult to perceive how its acts can be assailed upon constitutional grounds.'' In *Vega Steamship Co.* v. *Cons. Elevator Co.,* 75 Minn. 308, 77 N. W. 973, 43 L. R. A. 843, 74 Am. St. Rep. 484, it was held that a certificate of a public weighmaster cannot be made conclusive evidence. *State* v. *Thomas,* 144 Ala. 77, 40 So. 271, 2 L. R. A. 1011, 113 Am. St. Rep. 17, 6 Ann. Cas. 744; *State* v. *Beach,* 147 Ind. 74, 46 N. E. 145, 36 L. R. A. 179; *Meadowcroft* v. *People,* 163 Ill. 56, 45 N. E. 303, 35 L. R. A. 176, 54 Am. St. Rep. 447; Cooley's Const. Lim. 526.

In order to issue an order of removal under P. S. 3718, the court must find upon competent evidence before it not only that the alleged insane person is destitute of means to support himself, and without relatives in the state bound by law to support him, but it must also find that such person is insane, and is dangerous. The last, since the statute provides that neither idiots and persons *non compos,* nor demented persons, who are not dangerous, shall be confined in a hospital for the insane. P. S. 3759.

We think the statute respecting the use of the certificate may reasonably be so construed as to make it, like an inquisition of lunacy when traversed, *prima facie* evidence of the person's insanity, with which construction the statute will be valid. At the same time a construction might reasonably be had giving the certificate conclusive effect, thereby rendering the statute invalid. The court will assume that the Legislature did not overlook the provisions of the Constitution and intended that the statute in this respect should be effective. Two constructions being equally obvious it is the duty of the court to adopt the one which is in harmony with the provisions of the Constitution. *Grenada County Supervisors* v. *Brown,* 112 U. S. 261, 28 L. ed. 704, 5 Sup. Ct. 125; *Knights Templars' & Masons' Life Indemnity Co.*

v. *Jarman,* 187 U. S. 197, 47 L. ed. 139, 23 Sup. Ct. 108. We hold therefore that in the trial of the issues before a court of inquiry under the provisions of P. S. 3716-3718, the physicians' certificate, if made in compliance with the law, is *prima facie* evidence of insanity.

A case very much in point is *Shumway* v. *Shumway,* before cited, which involved the construction of section 102, of Ch. 44, of the Laws of Vermont: That the probate court of any district shall have power, ''on request of any friend, or relation, of any idiot, *non compos,* lunatic, or distracted person, residing in such district, to issue a commission to the selectmen and civil authority of the town, in which such person resides, to make inquisition in the premises; and if said person shall be found by them, or a major part of them, on being notified and examined by them, to be incapable of taking care of him or herself, they shall certify the same on such commission and return the same to such court; and said court shall thereupon appoint some suitable person or persons to be guardian of such person so long as he or she shall remain incapable of taking care of him or herself.'' The case was an appeal from a decree of the judge of probate, assigning a guardian over the appellant, by virtue of this statute. A commission was issued to the selectmen and civil authority, they made inquisition in the premises, and made their return to the judge of probate, on which they certified that notice had been given to the appellant, but it did not appear when or how: Whereupon the judge assigned a guardian without causing notice to be given to the appellant to appear before him, who did not appear. It was contended, among other things, that the selectmen and civil authority were made the judges of the ability of the appellant, whether he was capable of taking care of himself, and that their proceedings, when returned to the court of probate, were conclusive, and the judge was not to have any hearing before him, but on the return of the inquisition was to assign a guardian without further proceedings. It was further contended that the case was not appealable. The Court said: ''We consider the duty of a judge of probate under our statute to be very plain and easy. When application is made to him for a commission of lunacy, accompanied with affidavit, he should issue it with directions on the same for notifying the pretended lunatic. The selectmen and civil authority are then to notify

agreeably to directions, and make inquisition; after which they are to make return to the judge of probate of all their doings; who is then to give the supposed lunatic reasonable notice of time and place, and a full hearing before him; and if upon such full hearing he is satisfied the case requires it, he is to assign a guardian; but must give opportunity and grant an appeal if requested."

It appears from the record that the certificate was made October 16, 1906; that on the following day (17) application was made to the judge of probate for a court of inquiry to ascertain whether the said Lydia Ann should be committed to the hospital for the insane, at the expense of the State. A hearing was had before that court, an order made by it for her removal to the hospital, and she was committed thereon—all within the day of the application. It further appears that notice was given to the state's attorney of the county, and that he was present and conducted the examination in behalf of the State. The statute (P. S. 3716) provides that at least ten days' notice of such proceedings shall be given to the state's attorney. Thus notified it is made the duty of that official to investigate the case and if he finds the alleged insane person not liable to be supported by the State, he shall attend the court of inquiry, producing such evidence as he deems advisable for the protection of the rights of the State. This liability to support by the State is made to depend upon the coexistence of the facts of the insanity of the person, the dangerousness of him if at large, his destitution of means to support himself, and the lack of relatives in the State bound by law to support him. Hence the State, as well as the alleged insane person, has an interest in all of these constituent questions. Whether the state's attorney can waive the length of notice required by statute and thereby anticipate the time of hearing before the court of inquiry, so far as the interests of the State are concerned, we do not decide; for certain it is that he cannot by waiver or otherwise materially interfere with the rights and interests of the alleged insane person in this respect. Adverting to what we have before said regarding the requirement of notice to such person, the length of notice being unfixed, it must be such as is reasonable in the circumstances of the particular case; and thus measured it can in no event be less than that required by due process of law, namely, such as gives him an

adequate opportunity to be present and to be heard in defence of his rights. The judge of probate has no authority to act before such notice has been given. The court is one of special and limited jurisdiction, and it can proceed in hearings of this nature only in strict conformity with the statute. And since the record shows that two of the questions of fact essential to the issuing of the order of removal here under consideration were not heard and determined by the court of inquiry, and since it does not appear from the record that the hearing there had was upon the required notice to the alleged insane person, on the face of the record the court proceeded in a manner not authorized by law, and its order of removal is void. *Hendrick* v. *Cleveland,* 2 Vt. 329; *Inhabitants of Winslow* v. *Troy,* 97 Me. 130, 53 Atl. 1008; *Behrensmeyer* v. *Kreitz,* 135 Ill. 591, 26 N. E. 704; *Morton* v. *Sims,* 64 Ga. 298.

At the last session of the Legislature section 3757 of the Public Statutes was so amended as to give the right of appeal from the decision of the physicians, to the person certified to be insane, or to any next friend or relative of such person, to the probate court, with the right there of a trial by jury; and that any person detained at any hospital for the insane in this State when said amendatory act took effect shall be entitled to such appeal and trial thereon. Laws of 1908, No. 94. It is sufficient for the case at bar to say that the right of appeal given by this amendment can have no application where before the passage of that act the insane person was removed to the hospital for the insane as an insane state pauper by order of a judge of probate under the provisions of P. S. 3715-3719. In such a case the commitment and the detention are not upon the certificate of physicians, but by virtue of an order of the judge of probate; and since his jurisdiction is special and limited an order of this character issued by him, to be legal, must show such facts as are jurisdictional. *Holden* v. *Scanlin,* 30 Vt. 177. For this purpose the certificate is by statute to be left with the superintendent or trustee of the hospital by the officer executing the order and in connection therewith, thus making it part of the order.

The result is that the proceedings of the court of inquiry are a nullity, and the confinement of the said Lydia Ann in the hospital for the insane, on the order of that court, is illegal and

without authority of law. She will therefore be discharged from such confinement on said order. Yet if she is insane and her going at large would be dangerous to herself or to others she will not be set at liberty on habeas corpus. In such circumstances it is the duty of the court and within its common law power resting upon public necessity to restrain her until resort can be had to regular and orderly means to place her under permanent legal restraint. *In re Shuttleworth;* 9 Ad. & El. (N. S.), 651, 58 E. C. L. 650; *Ex parte Greenwood,* 1 Jur. (N. S.), 522; *In re Boyett,* 136 N. C. 415, 48 S. E. 789, 67 L. R. A. 972, 103 Am. St. Rep. 944; *Ekiu* v. *United States,* 142 U. S. 651, 35 L. ed. 1146, 12 Sup. Ct. 336. If the court has reason to believe the person insane and dangerous this power should be exercised. For this purpose the condition may be sufficiently ascertained from the respondent's return, from the evidence in the case, or by any other legitimate method, to enable the court to determine whether such temporary restraint would be justifiable. In the case at bar the record affords no information, but as the person, whose discharge is sought, is in the custody of the court, its common law jurisdiction over infants, idiots, and lunatics enables it to act with reference to this question from its own conscience and on its own information, acquired in such a way as it deems best. See 2 Stephen's Com. 511; *King* v. *McLean Asylum,* 64 Fed. 331, 12 C. C. A. 145. Touching this question the court's information is such that upon an order to be issued by it for this purpose she will be placed under the care and custody of the superintendent of the Vermont State Hospital for the Insane at Waterbury for a reasonable time, or for such specified time as may be named in said order, to the end that the necessary proceedings may be had to determine her state of mind and, upon that being found, to be dealt with as the law directs.

*Munson, J. concurs in the result.*