LISLE M. CARPENTER *v.* CENTRAL VERMONT RAILWAY COMPANY.

February Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed July 31, 1911.

*Certiorari—Judgments Reviewable—"Final Judgment"—Change of Venue—Local Prejudice—Negative Testimony—P. S. 1492.*

The denial of a petition for a change of venue under P. S. 1492 is a "final judgment" reviewable on *certiorari.*

On a petition for a change of venue, testimony of long time residents of a county, who have large acquaintance in the vicinity where they live, that they never heard anything said indicating ill feeling against defendant is relevant to show that no such feeling exists.

Because of P. S. 1467, authorizing county judges to direct from what towns jurors shall be drawn, the prejudice that under P. S. 1492 warrants the granting of a change of venue because an impartial trial cannot be had must exist generally throughout the county, existence in a particular locality is not sufficient.

P. S. 1492, authorizing a change of venue because an impartial trial cannot be had, should be construed in the light of the common law.

PETITION for a writ of *certiorari*, brought to the Supreme Court at its January Term, 1911, and heard at the February Term, 1911. The opinion states the case.

*C. W. Witters, Clarke C. Fitts* and *Harold E. Whitney* for the defendant.

*Cudworth & Pierce* and *Gibson & Waterman* for the plaintiff.

ROWELL, C. J. This is an action on the case pending in Windham County court. The defendant, before trial, preferred its petition to the presiding judge of that court, according to the statute in such case made and provided, praying for a removal of the case to the county court of another county for trial, because of local prejudice against it in Windham County. The prayer of the petition was denied on hearing, and the de-

fendant comes here for a writ of *certiorari* to bring up the record of those proceedings for review.

The plaintiff objects that the denial of the prayer of the petition is not such a final judgment as warrants *certiorari*, as it in no way touched the merits of the case itself, but was in a purely sessions proceeding, preliminary to a trial of the case on its merits.   But the objection is not tenable, for the denial *did* finally determine the question involved in that proceeding, though it did not, and of course could not, touch   the merits of the principal case, for it simply supervened upon it.

The petition for removal alleges that the action arose out of an injury to the plaintiff, charged to have been caused by the defendant's negligence while the plaintiff was in its service as a trainman on the West River Branch of its road, extending from Brattleboro to Londonderry, a distance of thirty-seven miles; that the defendant also operates a railroad running from South Vernon to Brattleboro, on whch the plaintiff also worked to some extent; that said roads extend diagonally through the county from the southeastern corner to the northwestern corner, furnishing exclusive railroad facilities to a considerable portion of the people of the county, and serve to a greater or less extent through connection with stages and otherwise, nearly the whole county; that before July 18, 1910, in its operation of said roads, it employed many trainmen, residing largely in different parts of the county, who, by relationship and acquaintance, were in considerable touch with practically the whole county, and that, taken together, they had an acquaintance covering substantially the entire county, including nearly all the. villages in it; that the town of Brattleboro is the junction of said roads, and was the residence of a large number of the trainmen before and on the 18th of July; that the village of Brattleboro is the largest village in the county and its chief business center, where two newspapers are published, which circulate in every   town in the county, and together go into almost every family in the county.

The petition   further alleges that on the 18th of July, all of the trainmen on said roads struck, and left the defendant's employment because it refused their demands as to terms of service and amount of wages; that the strike caused great ex-

citement all along the lines; that train service was seriously interrupted thereby, and the carrying on of business throughout almost the whole county seriously affected; that the delivery of the mails was seriously delayed, and great trouble and inconvenience in general caused the people of the county at the inception of the strike and during its early days; that several public meetings were held at Brattleboro during the two weeks next following the strike, which were presided over by public officials of the town, countenance to which meeting was given by persons in public position, and which were addressed by public officials in town, in condemnation of the defendant, among which officials was one of the plaintiff's attorneys; that in said meetings, with the apparent countenance of said public officers and officials, the defendant was seriously censured and condemned, its management attacked, and its officers accused of various wrongful acts; that the public order and peace in Brattleboro, and to some extent in other places, were disturbed, and crowds of strikers and sympathizers congregated at the defendant's place of business in Brattleboro, and disturbed and interrupted the ordinary conduct of its business; that threats were made against the defendant and its employees and concerning its property and the operation of its business; that at manufacturing and other business establishments in Brattleboro, placards with abusive epithets were displayed, directed against the defendant and its employees; that the newspapers in Brattleboro, and in other towns in the county, contained reports of said meetings and violence; that the strikers circulated about the county, voicing their claimed grievances in public meetings and otherwise; and that labor agitators came into the county and addressed public meetings, setting forth claimed grievances against the defendant, and excited the people of the county in animosity against the defendant.

The presiding judge said in disposing of the petition, that he rejected from consideration in affidavits presented by both parties, all expressions of opinion or judgment of the affiants, and all statements of fact made on information and belief, and all statements of fact appearing to be hearsay.

He also said that the petitioner urged as a ground for relief that the case could not be impartially tried in the county be-

cause the prejudice and feeling engendered against it throughout the county by the recent strike were so strong and general as to prejudice its chances of a fair trial. The judge then went on to say that upon a careful consideration of all the evidence received, he failed to find reason to believe that the case could not be impartially tried in the county; that he was not unmindful of the fact that the evidence disclosed a state of mind on the part of considerable numbers of citizens in certain sections of the county, notably in Brattleboro, inimical to an impartial trial; but that the test is, not whether there is such a state of feeling in some locality within the county, but whether there is such a prejudice existing generally throughout the county as to afford reason for believing that an impartial trial can not, with reasonble facility, be secured in the county; that he was not convinced from the evidence that any considerable prejudice against the defendant existed throughout the county outside of Brattleboro; that the evidence of it was meager and unsatisfactory, and rested largely in circumstances; that the inferences relied upon by the petitioner from the enforced suspension of business on its roads and the consequent hardship    visited upon the communities served by it, as well as the circulation of newspaper reports concerning the strike and the causes, were fully met by the testimony of business men and others throughout the county in position to know the trend of public sentiment in their localities; and that the newspaper articles in evidence contained little by way of criticism of the road or its officials, and well might impress their readers with the belief that the petitioner was acting fairly with its employees.

The defendant objected below to the plaintiff's affidavit of Frank Jones, and to all its contents, as immaterial and irrelevant, and as being only the expression of his opinion, without stating the facts upon which it is based, and as giving the affiant's judgment rather than stating facts. It also objected to all of the plaintiff's other affidavits on the same ground.

The defendant selects the affidavit of Jones as a fair sample of all the others, and the plaintiff does not claim that it is not. The substance of that affidavit is this: He lives in Dover and has for seventy years, and was town clerk twenty-five years; has a large acquaintance in Dover and vicinity; knew of the

strike; never heard anything that would show any ill feeling whatever against the defendant nor its officials, and if any such feeling was common in Dover and vicinity he should have known it, he knows and talks with so many people there; knows of no reason to prevent the defendant from having a fair trial of any case in Windham County court.

The defendant claims that the presiding judge could not have rejected from consideration, as he says he did, all expressions of opinion or judgment of the affiants, and all statements of fact made on information and belief, and all statements of fact appearing to be hearsay, for if he had, no part of Jones's affidavit, nor of any affidavits of similar import, would have been considered by him, and so he would have been unable to say that the testimony of business men and others throughout the county was such that he was unable to find that any general prejudice existed throughout the county against the defendant. In support of this claim the defendant eliminates from Jones's affidavit all the judge says he rejected from consideration, and leaves only this, namely, that the affiant had lived in Dover seventy years, and been town clerk twenty-five years; that he had a large acquaintance in Dover and vicinity; knew of the strike; never heard anything said that would show any ill feeling whatever against the defendant nor its officials; and that he knows and talks with many people. As to the remaining part of the affidavit, namely, that if such a feeling was common in Dover and vicinity, the affiant would have known it, as he knows and talks with so many people there, the defendant says it is only an expression of opinion without stating any facts on which to base it; that he does not state with whom he talked, nor with how many, nor whether the strike or the defendant was mentioned in any of the talks he had. Such affidavits, the defendant says, are immaterial and irrelevant, without probative force, and merely negative at best; that they in fact seek in themselves to determine the precise point that the presiding judge was to determine, but contain no legal evidence on which the judge could properly make a finding, because, stripped of hearsay and opinion, they contain no facts relevant to the issue before him.

This criticism of the plaintiff's affidavits is largely just.

There are a good many of them from all parts of the county, and their wording is so nearly identical as to suggest a common origin. But the claim that they contain no legal evidence on which the presiding judge could properly act, and contain no facts relevant to the issue before him, can not be maintained, for the negative testimony of the affiants that they never heard anything said in their vicinity that would indicate ill feeling against the defendant nor its officials, must be held to be relevant to show that no such feeling existed. Mr. Wigmore says that there is no inherent weakness in this kind of testimony, the only requirement being that the witness should have been so situated that in the ordinary course of events he would most likely have heard or seen the fact had it occurred. 1 Wig. Ev. §664. And we all know that this kind of testimony is constantly received. Thus, in *State* v. *Phair*, 48 Vt. 366, it became and was important to show, as bearing on the guilt or innocence of the prisoner, where he was on a certain day. He claimed that he was at a circus at Brandon, and returned to Rutland on the midnight train. *Held*, that the State might show by a witness who knew the prisoner, and who attended the circus and returned to Rutland on the midnight train, that he did not see the prisoner at the circus nor on the train. The Court said that that was clearly legally admissible as tending to show that the prisoner was not at Brandon that day. *Comstock's Admr.* v. *Jacobs*, 84 Vt. 281, 78 Atl. 1017. So to sustain a witness sought to be impeached, you may show by those who have had opportunity to know his reputation that they never heard his truth and veracity questioned. *Comstock's Admr.* v. *Jacobs*, *supra*.

In respect of changing venue, the statute provides that "when it appears to a presiding judge of the county court that there is reason to believe that a civil action pending in such court can not be impartially tried in the county where it is pending, such judge shall, on petition of either party, order the cause removed to the county court in another county for trial." P. S. 1492. The defendant claims that the presiding judge erred in the construction of this statute, and in holding the test to be, not whether there is such a feeling in some locality within the county as to be inimical to an impartial trial, but

whether there is such a prejudice existing generally throughout the county as to afford reason for believing that an impartial trial can not, with reasonable facility, be secured in the county; that the true rule is, as held in Wisconsin under a statute practically identical with ours, that when a fair and an impartial trial by the means provided by law can not be had in the county in which the venue is laid, it constitutes sufficient ground for a change. *Cyra* v. *Stewart*, 79 Wis. 72, 48 N. W. Reporter 50. The defendant further claims that it is not enough to satisfy constitutional requirements and the meaning of the statute, that by careful sifting it is possible to find a jury in the county that is unprejudiced, because it is impossible to sift to that fineness; that it is entitled to a forum where there are not a considerable number of citizens with inimical feeling towards it; and that it is entitled to the whole county for its venire, and can not be confined to the county, excluding Brattleboro and perhaps some other towns.

But these claims can not be sustained. The rule stated by the presiding judge is substantially correct, as will more clearly appear when we read the statute in the light of the common law, and construe it with reference thereto, as we must. *In re Allen*, 82 Vt. 365, 73 Atl. 1078, 26 L. R. A. (N. S.) 232; Black, Int. Laws, 232, and it does not materially differ from the Wisconsin rule, which the defendant says is correct, for the judge's rule means, of course, what the Wisconsin rule expressly says, namely, "by the means provided by law", and here the law provides the means by which the judge's rule can be administered, for the statute declares that the judges of the county court shall from time to time direct the clerk of the court from what towns the grand and petit jurors shall be summoned, and the number from each town. P. S. 1467. This statute may well be availed of in such a case as this, to secure a jury away from the prejudiced part of the county, for it is certain enough that a party has not a right to the whole county from which to select his jury. Thus, in *Cochecho Railroad* v. *Farrington*, 26 N. H. 428, which, in the absence of a statute, was ruled under the common law, there were thirteen towns in the county in which the action was pending. It would have been difficult to organize an impartial jury from four of the towns through which the

road ran.  But in the remaining nine the court saw nothing in the evidence that led it to conclude that the subject-matter of the suit had been particularly discussed or opinions formed, nor that any extraordinary difficulty would exist in securing an impartial jury, and denied the defendant's motion for a change of venue.  That this case is according to the common law can not well be doubted.  Thus, *Mayor of Poole* v. *Bennet*, 2 Str. [874], was laid in the county of Poole, and for a duty claimed to be due to the corporation.  On motion the venue was changed to Hampshier, it appearing that there could be no fair trial in Poole.  Here, it should seem, the whole county was affected.  So in *Mylock* v. *Saladine*, 3 Burr. 1564, there was strong proof of a general prejudice.

In *People* v. *Baker*, 1 Cal. 403, the prisoner moved for a change of venue on the ground of prejudice in a certain town in the county.  But as it did not appear that an impartial jury could not be selected from other parts of the county, the motion was denied.  So in *State* v. *Perigo*, 70 Iowa 658, the prisoner petitioned for a change of venue on the ground of excitement and prejudice against him in the county.  The court said that it was undoubtedly true that a very considerable excitement was created by the killing, and that some prejudice arose against the prisoner soon after the occurrence, but that this in a great measure was confined to the portion of the county in which it took place, and that it did not believe that the people of the county generally were affected by it, and that it was reasonable to suppose that the excitement had largely subsided, and the petition was denied.

It can not be said, therefore, that the judge did not exercise according to law that reasonable measure of discretion accorded to him, and so

*The writ is denied with costs.*