### Sophia McCoy, v. A. F. Nuese, Appellant.

**New trial:** NEWLY DISCOVERED EVIDENCE: SUFFICIENCY. In this action
to charge defendant as the confidential advisor of a deceased
person with property entrusted to him, it was made to appear
that a certain certificate of deposit and notes had been entrusted
to defendant by decedent, and there was no showing of their
return to him. *Held,* that affidavits in support of defendant's
motion for a new trial on the ground of newly discovered evi-
dence showing a return of the certificate and its payment to
decedent by the bank, and of the notes and of their subsequent
payment by the persons to whom they were given, disclosed suffi-
cient newly discovered evidence to require the granting of a new
trial.

**Bailees:** DELIVERY OF PROPERTY TO AN INCOMPETENT: LIABILITY THERE-
FOR. Where one who held securities belonging to another, ad-
judged an habitual drunkard, delivered them to him after the
commencement of proceedings for the appointment of a guardian,
he could not be held liable for the value of the securities by an
heir of the incompetent, after his death; the appointment of a
guardian not having been made at the time of the delivery.

*Appeal from Story District Court.*—Hon. C. G. Lee,
Judge.

Wednesday, February 14, 1912.

Action in equity for an accounting. Decree for
plaintiff, and defendant appeals. The material facts are
sufficiently stated in the opinion.—*Reversed.*

*Boardman & Lawrence* and *J. M. Parker,* for appel-
lant.

*Willett & Willett, U. S. Alderman,* and *Bradford &
Johnson,* for appellee.

Weaver, J.—The plaintiff alleges that she is the granddaughter and only heir of Fred Dannenbrink, who died intestate October 22, 1904. She further alleges that in his lifetime Dannenbrink was possessed of an estate of considerable magnitude; that before his death he had become, by reason of advanced age and intemperate habits, incapable of managing and controlling his property; that in October, 1902, in a proceeding brought for that purpose, he was duly adjudged an incompetent, and one John Banzhof was appointed and qualified as guardian of his estate, but that none of the property of the ward ever came into the hands of said guardian, who was duly discharged in January, 1903; that after the decease of said Dannenbrink plaintiff was appointed administratix of his estate, and having fully administered thereon she was finally discharged March 24, 1906. She further alleges that for many years prior to his decease Dannenbrink was on very intimate terms of friendship with the defendant, A. F. Nuese, who assumed to be and was, in fact, his confidential advisor in all business matters, thereby winning the confidence of the deceased, who followed and obeyed the defendant's dictation and advice; that from about January, 1900, down to the date of his death the deceased was mentally incapable of properly transacting his business; that while in this condition the defendant, taking undue and fraudulent advantage of him, obtained possession and control of his property and estate, and converted them into cash, for which he never made payment or accounting to the deceased, or to any other person lawfully entitled thereto.

Plaintiff further states that she has no knowledge of and can not state the items for which plaintiff should account, or any of them, or the value thereof, but alleges her information and belief that the property so wrongfully converted was of the value of $15,000, and she avers that she first learned of the alleged wrongful acts of the defend-

ant on August 19, 1902; and that the original notice in this case was placed in the hands of the sheriff for service August 17, 1907. She still further alleges that the right of action for an accounting accrued to Dannenbrink in his lifetime; that upon his death said cause of action survived in favor of his estate; and that upon final settlement of her administration said right of action passed to plaintiff as his only heir.

In a second count of the petition, plaintiff restates the same cause of action in somewhat varied terms, and demands that an accounting be had. By way of answer, the defendant denies the allegations of the petition, alleges that plaintiff is barred and estopped to maintain said action, both by the statute of limitations and by her own laches. He further alleges a prior adjudication, which plea is based upon certain proceedings had and orders entered in the guardianship proceedings referred to in the petition.

On these issues, there was a trial to the court and decree entered, under date of July 6, 1910, awarding plaintiff a recovery of $8,200.45, with interest and costs. Thereafter, on August 25, 1910, the defendant made application to set aside the decree and for a new trial on the ground of newly discovered evidence. The substance of this showing will be more fully stated later in this opinion. On December 12, 1910, the application for new trial was denied. The defendant has appealed, both from the original decree and from the overruling of his petition for new trial.

The record presented for our consideration is unusually voluminous, and it will not be practicable for us to set it out fully, even in synopsis. We have, however, read it with the care that the unusual, if not remarkable, controversy of which it treats demands. It may be said at the outset that the testimony as a whole discloses such frequent, if not reckless, intermingling of pertinent facts

with matters of hearsay, conclusion, and conjecture that a satisfactory result is not easily reached.

Fred Dannenbrink was of German birth. His domestic history is not very fully disclosed. He had been once married, his wife dying about the year 1887. Of this marriage the plaintiff, a granddaughter, is the only surviving descendant. Prior to the year 1900, he had acquired land to an aggregate of about one hundred and ninety-five acres, and was possessed of personal property, such as is usually found upon Iowa farms. The defendant herein, who is also of German birth, was an old acquaintance of Dannenbrink's; indeed, there seems to have been some remote or indirect tie of family relationship between them. They were on terms of close friendship, and met and visited frequently. Dannenbrink was, at least at times, addicted to overindulgence in drink. In the year 1901, he sold and conveyed a sixty-acre tract of land to one George A. Tewksbury for the expressed consideration of $2,500. In the following year, he sold and conveyed to Tewksbury the remainder of his land for $3,000. It should be said, with respect to this conveyance, that the one hundred and thirty-five acres appear to be made up of numerous small tracts of from two to forty acres each, which, while being in the same neighborhood, are not all in one compact body. About the same time, most of his personal property was also disposed of.

At the September term, 1902, of the district court, plaintiff herein brought an action for the appointment of a guardian for the property of her grandfather. This proceeding was contested by him, but upon a verdict in plaintiff's favor, John Banzhof was appointed and qualified as guardian. Three months later the guardian was, upon his own application, discharged, and no one was thereafter appointed to serve in his stead. After Dannenbrink's death in 1904, plaintiff was appointed administratrix of his estate, and thereafter made settlement thereof, and was discharged upon her final

report, showing that she had received assets of said estate to the amount of $196, and no more. In the present action, as we have seen, plaintiff, asserting her claim to be the sole heir of the deceased, seeks to recover from defendant an amount equal to the value of the entire proprty of which said deceased was seised and possessed prior to the appointment of the guardian, on the theory and charge that the same was by him, in some way, absorbed, converted, or wasted. Pertinent to this situation, it should further be said that about the time this action was commenced plaintiff instituted another action against George A. Tewksbury to set aside the deeds of conveyance made to him by Dannenbrink, on the claim that said Tewksbury acquired the confidence of the deceased and exercised undue influence over him, and thereby obtained from him the land in question for much less than its real value. Whether that case has been disposed of or is still pending does not appear. At the time of rendering its decree herein, the trial court prepared and filed a written opinion dealing with the merits of the controversy. It does not make entirely clear the method pursued in computing the recovery awarded the plaintiff, nor disclose the very items of property with the value of which defendant is charged; but it is fairly apparent that the court held him chargeable with the money realized from the two conveyances of land and some other smaller items, aggregating about $7,000.

As to credits to be applied to the account, the court, after saying it "is probable that Dannenbrink had some money from the defendant which reduced the amount somewhat—just how much does not appear"—reaches the conclusion that defendant should be held liable for the principal sum of $5,750, for which, with accrued interest, a recovery was awarded. It would seem, therefore, that the court, by some process of equitably setting off the amount of these conjectural credits against the plaintiff's claims on account of the smaller items, alleged to have

been wrongfully converted by the defendant, found that a remainder substantially equal to the full amount of money realized from the sales of Dannenbrink's land still remained in defendant's hands, or had been lost or wasted by him, and never properly accounted for. In view of our conclusion upon the matter of the application for new trial, we shall not here attempt to discuss the merits of the principal case, or the correctness of the court's findings of fact, except so far as it may seem necessary and proper in disposing of the second appeal.

To properly understand the force and effect of the application for a new trial, it should be said that the evidence fairly shows that about the time the guardianship proceedings were instituted Dannenbrink had on deposit in bank the sum of $2,500, for which a certificate of deposit had been issued, payable to his own order. This certificate, with various promissory notes made by different persons, and payable to Dannenbrink, were by him put in defendant's hands, to be kept in his safety deposit box. The money represented by the certificate was evidently derived from the sale of land to Tewksbury. Defendant testified that on the morning after the trial upon the application for appointment of guardian, and before he knew of the result of such trial, Dannenbrink came to him and asked for the papers left in defendant's custody; whereupon defendant, understanding from him that the verdict was in Dannenbrink's favor, gave him the certificate and notes, and never thereafter had them in his possession or control. The opinion of the court indicates that this testimony was discredited, and further suggests that, as Dannenbrink was incompetent to transact business, such delivery to him of his own property, even if made as claimed, would be wrongful, and constitute no defense to plaintiff's action. The demand for new trial is, to a great extent, based upon allegations of newly discovered evidence

bearing upon plaintiff's claim to recover for the amount of the certificate of deposit and promissory notes.

In our judgment, appellant makes a sufficient showing of diligence with respect to the newly discovered testimony; and the material question we have to consider is whether the testimony is of such character that, if true, would necessitate a different result than was reached by the trial. The affidavits and exhibits in support of the application show, without contradiction, that the certificate of deposit was issued to Dannenbrink himself; and that after the verdict in the guardianship proceedings, but before the motion for new trial had been ruled upon, and three days before a guardian was in fact appointed, Dannenbrink himself presented it to the bank, indorsed it in his own name, and himself received the money due thereon. There is no evidence tending to show that defendant was present when the cash was paid, or that any part of it ever came into his hands. It is also shown that the promissory notes, so far as they appear to have been paid, were paid to Dannenbrink, who surrendered the notes to their makers.

1. New trial: newly dis covered evi dence: suffi ciency.

It further appears that he was very indignant at the conduct of his granddaughter in bringing said action against him, and he at once, so far as possible, severed all relations with her and sought a home elsewhere, and declared to different persons that he would bury, or had in fact buried, his money where she would get none of it. It is further shown, though not conceded, that he had an illegitimate son, known by the name of Fred Bierman, or Dannenbrink, who was born to him in Germany, and that Bierman had been brought to this country at Dannenbrink's expense, and had been acknowledged by him and given aid as his son. After this controversy arose between him and the plaintiff, he went to the city of Marshalltown, where he procured counsel to draw for him a formal written acknowledgment, under oath, that Bierman was his

son, and, having executed it, caused a statement thereof to be published in a newspaper. About the same time he took up his home with Bierman, remaining there until his death two years later. Bierman further makes affidavit when Dannenrink came to live with him he had in his possession $5,000 or more in money, which money he gave to the affiant, who buried or concealed it, taking therefrom, from time to time, such small sums as Dannenbrink's needs demanded. He further says that he kept the matter secret at Dannenbrink's request; and that after the death of the latter he did not reveal it until after the trial of this case, because of his fear of trouble with the plaintiff. There are other affidavits which tend to corroborate defendant's claim that the money or securities which he once had in possession for Dannenbrink was returned to the latter.

Without extending this opinion for a more minute statement of the facts, we have to express the opinion that the application for a new trial should have been granted. We reach this conclusion the more readily because of the very grave doubt which a reading of the record leaves in our minds of the sufficiency of the evidence to sustain the decree. Indeed, looking at the record without any reference to the showing in support of the application for new trial, it is our opinion that no case was made for the recovery of the sum of $3,000 realized upon one of the sales of the Dannenbrink land, and of this were the only matter of dispute we should have to enter a reversal upon the merits. The other item of $2,500, represented by a certificate of deposit, together with a few promissory notes, presents more difficulty, chiefly because the history of these securities was not clearly traced from the date of defendant's alleged delivery of them to Dannenbrink, and left it open to possible inference that defendant had in some way obtained or enjoyed the benefit thereof. The showing made upon the petition for new

trial fairly fills this gap, and if upon a retrial that show-
ing is made good, a different result is quite inevitable.

That the court and the parties in interest may not
be misled upon retrial, it is essential that we give attention
to a rule of law which appears to be affirmed in the
opinion which accompanies the decree. It
is there said, in substance, with reference to
the defendant's claim of having surrendered
the certificate and notes to Dannenbrink be-
fore the appointment of a guardian, that, even if this be
true, yet Dannenbrink being incompetent, a delivery to him
will constitute no defense to plaintiff's demand. We
think this proposition of law can not be approved. Up to
the entry of judgment, finding him incompetent and ap-
pointing a guardian, Dannenbrink was presumably com-
petent, to do business, the title to the securities was in
him, and if he demanded possession of them defendant
could not rightfully refuse to deliver them. If he de-
manded and received them and collected the money on
them, it was his money until, at least, the time when his
legal title was divested by the appointment of a guardian;
and if he secreted the money, or refused to deliver it on
demand of the guardian, we think there is no rule of law
or equity which gives the guardian recourse upon the bailee
who had surrendered the property to the bailor at a time
when no person possessed the legal right to forbid it. If
the defendant was setting up any claim of title in himself
to any part of this property, it would, of course, be perti-
nent upon the question of his good faith to show that he
obtained it, knowing of the pendency of the proceedings
for appointment of a guardian; but he makes no such
claim, and he is sought to be held accountable, not because
he converted it to his own use, but because he delivered
it to the owner, who had the undisputable right to de-
mand and receive it.

Had plaintiff wished to suspend her grandfather's

*2. Bailees: delivery of property to an incompetent: liability therefor.*

legal right to receive and hold his own property, pending her application for appointment of a guardian, she could, under our statute, have secured a temporary appointment, without notice, and armed with this authority have taken possession and control of the estate until the final hearing, and thus, perhaps, have been in stronger position to question the dealings of the old man until the question of his competency was duly adjudicated.

The title and right of possession in this property was at no time in abeyance. Up to the time when the guardian was duly appointed, it was in Dannenbrink alone, and then, and not till then, did it pass to the guardian. *Baker v. Potter,* 51 Conn. 78.

So far as the evidence in the main case is concerned, there is no showing of any kind that the guardian ever asked Dannenbrink for the money, or made search or effort to find it. In three months from the date of the guardian's appointment, his application to be discharged was granted, and no successor was appointed. This amounted to an abandonment of the guardianship proceedings, and Dannenbrink was left in the legal possession and control of whatever property remained to him.

If, upon being freed from the guardianship, he had himself sued defendant to recover the amount of the certificate and notes, and defendant had pleaded and proved their delivery and return, as shown in this case, no court would for a minute entertain the proposition that this was not a complete defense. Plaintiff, as the alleged heir at law, comes into court with no higher or better right of recovery than. would have belonged to Dannenbrink himself, were he still living and himself prosecuting the claim.

It is unnecessary in the disposal of these appeals to attempt any discussion of other issues presented or of the testimony generally, and we shall not further prolong this opinion. It follows from what we have said the ruling of the trial court, denying the application to set aside the de-

cree and for a new trial, must be reversed, and the cause remanded for further proceedings in harmony with this opinion. Appellee's motion to dismiss and to strike are overruled.—*Reversed.*