SOPHIA McCOY, Appellant, v. GEORGE A. TEWKSBURY et al.,
Appellees.

**DEEDS:** Rescission—Fraud—Failure to Return Consideration—Ef-
fect. A deed obtained by fraud may not be rescinded and an
accounting had of the rents and profits unless the consideration
paid be returned or legally tendered by the one defrauded, or
by the one occupying his shoes, and financial distress is no ex-
cuse for a non-return or tender. In other words, such return
or tender is an essential and unavoidable element of a legal
rescission.

**DEEDS:** Validity—Fraud and Undue Influence. Principle recog-
nized that a deed obtained by fraud is not void, but voidable.

**ELECTION OF REMEDIES:** Fraud—Confirmation or Repudiation
of Deed. Principle recognized that one defrauded into the ex-
ecution of a deed may elect:
1. To confirm the deed and recover his damages; or

2. To rescind the deed and recover the land with the rents and profits.

DEEDS:    Rescission—Fraud—Return of Consideration—Action by
4   Heir of Grantee.    The consideration paid by one who fraudulently obtains a deed must be returned or tendered to him, in order to work a rescission, even though the action is by one who has succeeded to the rights of the defrauded grantee, and even though the one so succeeding *never received any of the consideration.*

*Appeal from Tama District Court.*—B. F. Cummings, Judge.

### December 18, 1917.

Suit in equity to set aside conveyances of land made in his lifetime by the ancestor of the plaintiff to the defendant George A. Tewksbury. The ground of relief, stated in general terms, is that the deeds were obtained by fraud and undue influence, and that the consideration agreed upon was much less than the real value of the lands. Plaintiff prays that the deeds be set aside, and for an accounting for rents and profits.

The answer includes a general denial, a plea of the statute of limitations, plea of ratification and election of remedy, and that neither the plaintiff nor her ancestor ever rescinded or offered to rescind the contract of sale, and that the consideration paid by the defendant for the land has neither been returned nor offered to him, nor has the plaintiff at any time tendered the same in her petition. The plaintiff pleaded in reply that she herself is and was insolvent, and unable for lack of means to tender to the defendant a return of the consideration, and that in fact such consideration never came into her hands. There was a decree dismissing the petition, and the plaintiff appeals.— *Affirmed.*

*Bradford & Johnson* and *Jas. H. Willett,* for appellant.

*C. H. E. Boardman* and *Struble & Stiger,* for appellees.

Evans, J.—This case is related to the
1. Deeds: re- case of *McCoy v. Nuese*, 154 Iowa 563, 566,
scission:
fraud: fail- and the same case on a second appeal ap-
ure to re-
turn consid- pearing in 164 N. W. 162 (not officially re-
eration: effect.
ported). Many of the facts appearing in
such former case appear in this record also. For the pur-
poses of this case, it must be assumed that the plaintiff is
the granddaughter and the only heir of Fred Dannenbrink,
now deceased. Dannenbrink was the owner of 195 acres of
land in Tama County, situated largely upon the river bot-
toms. In April, 1901, he conveyed 60 acres of his land to
Tewksbury, for a purported consideration of $2,500. In
February, 1902, he conveyed to Tewksbury the remaining
135 acres for a purported consideration of $3,000. The
petition avers that the purported consideration of $2,500
in the first deed was grossly inadequate, in that the value
of the land was $3,600, and likewise that the purported
consideration of $3,000 in the second deed was grossly in-
adequate, in that the land was reasonably worth the sum
of $6,000. It is further averred that Dannenbrink was men-
tally incompetent to transact the business, because he was
an habitual drunkard; that Tewksbury was his friend; that
he furnished liquor to Dannenbrink, and procured his in-
toxication, and drank with him; and that Tewksbury there-
by unduly influenced him and obtained from him the convey-
ances in question. It is made to appear that, in 1902, the
plaintiff procured the appointment of a guardian for her
grandfather, on the ground that he was an habitual drunk-
ard. This guardianship lasted for a period of three months,
at the end of which time the guardian was discharged. Dan-
nenbrink died intestate, in October, 1904. The plaintiff
was appointed as his administrator. She made her final
report and obtained her discharge in March, 1906. This
suit was begun June 29, 1907. The final trial of the case
appears to have been postponed, awaiting the disposition

of the case of *McCoy v. Nuese,* supra, and the trial hereof was not had until November, 1915. Many grounds are urged by the defendant in resistance to plaintiff's petition. In view of our conclusions thereon, it will be sufficient to consider one of them.

2. DEEDS: validity: fraud and undue influence.

The plaintiff appears to have proceeded upon the theory that the deeds in question were void *ab initio.* She therefore ignored them in her pleadings, and prayed for an accounting for rents and profits, and that the deeds be held void and set aside. Assuming it to be true that by fraud and undue influence Tewksbury obtained for $2,500 a conveyance of land worth $3,600, such contract and the conveyance thereunder would be voidable, but not void. Being voidable, its affirmance or disaffirmance rested in the election of the injured party. Until disaffirmed, it was valid. Nor was it necessary for the injured party even to disaffirm the deed in order to obtain redress for the

3. ELECTION OF REMEDIES: fraud: confirmation or repudiation of deed.

wrong. He might denounce the fraud and claim redress, and yet affirm the conveyance. He had his election either to repudiate the conveyance and demand rescission, or to affirm the conveyance and demand damages. The plaintiff stands here in the shoes of Dannenbrink. Her rights are neither greater nor less than his. One of the grave difficulties that confronts her here is that she pursues neither the remedy of rescission nor that for damages. She simply ignores the conveyance, and asks to recover the land and the rentals during the period of the defendant's occupancy. Her petition does not declare a rescission. She has at no time, either before suit or after, tendered a return of the consideration paid, nor does her petition declare a tender in the form of an offer therein. Her petition contains one allegation which was doubtless intended to meet this defect in the petition. The allegation is that Tewks-

bury did not in fact pay any part of the consideration named in the conveyances. Of course, if this allegation were proved, it would absolve the injured party from the obligation to tender any return. There would be nothing to return. But this allegation is wholly without support in the evidence.

4. DEEDS : rescission : fraud : return of consideration : action by heir of grantee.

The plaintiff filed an amendment to her petition whereby she sought to meet this defect in her case. By this amendment she alleged, in substance, that she had failed to tender a return of the consideration only because she herself was insolvent and without means; that none of the consideration, if any, paid by Tewksbury to Dannenbrink ever came into her hands; that none of this consideration came into her hands as administrator; that she prosecuted the suit against Nuese for the purpose of obtaining funds with which to make a tender of return of the consideration; that, if she had been successful in her suit against Nuese, she would have tendered a return of the consideration. The pleading and the theory underlying it are quite novel. The material question is not whether this consideration, or any part of it, came into the hands of this plaintiff, but whether it came into the hands of Dannenbrink. If it did, he was bound to return it, or offer it as a condition to disaffirmance. His solvency or insolvency would not affect that obligation. Still less would the insolvency of the present plaintiff affect the obligation. Suppose that Dannenbrink had commenced this action in his lifetime. Surely, the insolvency of his granddaughter, this plaintiff, could not have been pleaded in such action for the purposes here indicated. If it could not be thus pleaded then, there is no more reason why it may be pleaded now. The plaintiff's rights are precisely the same as those of Dannenbrink, and are to be determined under the same kind of pleadings and by the same kind of evidence and by the

same consideration of the mutual obligations of Dannen-brink and Tewksbury. . The plaintiff cannot maintain her action without a showing that would have entitled Dannen-brink to maintain such action. To say in her amendment that, if she had prevailed in her suit against Nuese, she would have tendered a return of the consideration to Tewks-bury, is quite beside the mark, and cures nothing. If the right of Tewksbury to a return of his consideration as a condition for the disaffirmance of the conveyances was de-pendent upon the result, of the suit between plaintiff and Nuese, then Tewksbury was the real plaintiff in interest in the Nuese case, and ought to have been required, or at least permitted, to prosecute it himself. Needless to say, he could in fact have had no standing in such suit.

It must be held, therefore, that neither Dannenbrink nor the plaintiff has ever in any legal sense disaffirmed the conveyances now complained of. That being so, it goes without saying that she is not entitled to an accounting for rents and profits. The evidence for plaintiff is directed principally to the question of excess in values, and that of the habitual intoxication of Dannenbrink. While these questions would be material as bearing on the question of fraud and undue influence, the evidence avails nothing to the plaintiff, in the absence of disaffirmance of the instru-ments or of a claim for damages in an appropriate action. The evidence on the question of values is not in itself very persuasive. As our observation goes, it is not difficult to produce present-day evidence that 40-dollar land 15 years ago was in fact worth much more than it brought. In the light of the present-day prices of land, the intrinsic values of the same lands 15 years ago surmount the then market values, and obtrude themselves upon the mind of the wit-ness.

In view of our conclusion at this point, we have no oc-casion to consider the question of the statute of limitations,

nor that of the election of remedies, nor whether the prosecution of the suit against Nuese was of itself necessarily an affirmance of the conveyances complained of. For the reasons indicated, the decree of the district court must be—
*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.