John McKinstry, Petitioner, v. Charles A. Dewey, Judge, et al., Respondents.

**GUARDIAN AND WARD:** Temporary Appointment Without Notice. The appointment of a temporary guardian of the person and property of a person, *without notice,* is violative of the "due process" clause of the Constitution.

*Certiorari to Washington District Court.*—Charles A. Dewey, Judge.

December 13, 1921.

Original action in certiorari, to review the granting of an order by the judge of the district court of Washington County, Iowa, appointing a temporary guardian for petitioner.—*Annulled.*

*Livingston & Eicher* and *W. M. Keeley,* for petitioner.

*Brookhart Bros.,* for respondents.

Faville, J.—From the record before us, it appears that, on the 16th day of May, 1921, one Charley McKinstry presented to the respondent, Honorable Charles A. Dewey, a judge of the district court of Iowa, in and for Washington County, in chambers, a petition praying that he, the said Charley McKinstry, be appointed temporary guardian of the person and estate of the petitioner herein; that at said time the said respondent entered an order upon said petition, appointing the said Charley McKinstry temporary guardian of the property of the said John McKinstry, and directing that he qualify and give bond in the sum of $25,000. Said petition does not appear to have been filed in the office of the clerk of the district court of Washington County, Iowa, at said time, nor had any notice of the

said hearing before the respondent as judge of said court, or of the commencement of said action in the district court of Washington County, Iowa, been had upon the petitioner. Petitioner brings this action in this court by certiorari, to review the action of the respondent as judge of said district court in making said order, and in appointing a temporary guardian of the property of the petitioner without giving any notice whatever to the petitioner of said proceedings.

The sole question for our determination is whether or not, under the statutes of this state, a judge of the district court, upon presentation of a petition of this character, can legally appoint a temporary guardian of the person and property of an alleged incompetent, without giving any notice to such person of the application for the appointment of said temporary guardian.

Section 225 of the Code provides that the district court shall have jurisdiction "to appoint guardians of the persons and property of all persons resident in the county subject to guardianship."

Section 3219 of the Code provides for the appointment of a guardian for a person of unsound mind, and that the said proceedings shall be by a petition, verified by affidavit, and presented to the district court of the county of which the alleged incompetent is an inhabitant.

Section 3220 of the Code provides:

"Such petition shall set forth, as particularly as may be, the facts upon which the application is based, and shall be answered as in other ordinary actions, all the rules of which shall govern so far as applicable and not otherwise provided in this chapter. The applicant shall be plaintiff and the other party defendant, and either party may have a trial by jury. The petition may be presented to the judge, who may appoint a temporary guardian."

The proceedings in the instant case were had under the last sentence in said section. The question for our determination is whether or not, in proceedings under the authority conferred by said Section 3220, the judge may appoint a temporary guardian upon the mere presentation of the petition, without requiring the appearance of the defendant in said action or the service of any notice on said defendant of said proceedings. The sec-

tion is broad in its terms, and requires that the proceedings in court shall conform as nearly as may be to actions by ordinary proceedings in this state. · This would require the service of an original notice within proper time, before the defendant would be required to answer in the district court. In the trial in the district court, by the terms of this statute, a jury may be required. But granting that such notice is essential to the final determination and trial of the question involved, and to the appointment of a permanent guardian, we are still confronted with the question as to whether or not, under this statute, the power conferred upon the judge to appoint a temporary guardian upon presentation of the petition confers the power so to do without any notice to the defendant in the action of said application for the appointment of a temporary guardian. The proceeding for the appointment of a guardian who is an inhabitant of the county, under this statute, is a proceeding *in personam*. *Raher v. Raher,* 150 Iowa 511; *Holly v. Holly,* 157 Iowa 584.

It cannot be disputed that, by such order of appointment, the defendant in such an action could be deprived of his liberty by the guardian, and could likewise be deprived by the temporary guardian of all management, control, and use of his property. Can this be done upon the presentation of a verified petition to a judge, and without any notice whatever to the party who is thus placed under temporary guardianship? This identical question does not appear to have been before us for determination.

In *McCoy v. Nuese,* 154 Iowa 563, we said:

"Had plaintiff wished to suspend her grandfather's legal right to receive and hold his own property, pending her application for appointment of a guardian, she could, under our statute, have secured a temporary appointment, without notice, and, armed with this authority, have taken possession and control of the estate until the final hearing, and thus, perhaps, have been in stronger position to question the dealings of the old man until the question of his competency was duly adjudicated."

This, however, was dictum, and the question involved in this proceeding was not before the court for determination.

*Holly v. Holly,* supra, involved the question of setting aside the appointment of a guardian, but no question appears to have

been raised in that case as to the jurisdiction of the judge to appoint a temporary guardian without notice.

This proceeding is not to be confused with proceedings for the commitment of an insane person to the hospital for the insane. That is an altogether different matter, and the method to be pursued and the remedy sought are altogether different from those in a proceeding for the appointment of a guardian. We have held that the investigation into the question of insanity before the board of commissioners of insanity may be had without notice to the person suspected of being insane. *Chavannes v. Priestly*, 80 Iowa 316; *County of Black Hawk v. Springer*, 58 Iowa 417; *Bisgaard v. Duvall*, 169 Iowa 711; *Corcoran v. Jerrel*, 185 Iowa 532.

In proceedings like those under consideration in the instant case, the object is not the care and confinement of a lunatic in the state hospital for the insane, but solely the appointment of a guardian of the person or property of one alleged to be incompetent. Under the statute, the petition may be presented to the judge by any person. No proof is required by affidavits or otherwise, beyond the verified averments of the petition, unless, on his own motion, the judge may require other proof.

In *Chase v. Hathaway*, 14 Mass. 222, the Supreme Judicial Court of Massachusetts, in 1817, discussed the question. This was a case wherein the judge of the probate court appointed a guardian for an alleged *non compos*, without notice. The language of the court is pertinent to a situation similar to the one in the case at bar. The court said:

"There being no provision in the statute for notice to the party who is alleged to be incompetent, by reason of insanity, to manage his estate, it seems that the judge of probate did not think such notice essential to his proceedings. But we are of opinion that, notwithstanding the silence of the statute, no decree of a probate court so materially affecting the rights of property and the person can be valid, unless the party to be affected has had an opportunity to be heard in defense of his rights. It is a fundamental principle of justice, essential to every free government, that every citizen shall be maintained in the enjoyment of his liberty and property, unless he has forfeited them by the standing laws of the community, and has had opportunity to

answer such charges as, accórding to those laws, will justify a forfeiture or suspension of them.''

See, also, *Wait v. Maxwell*, 5 Pick. (Mass.) 217; *Hathaway v. Clark*, 5 Pick. (Mass.) 490.

The Supreme Court of Alabama, in the case of *McCurry v. Hooper*, 12 Ala. 823, at an early day investigated the question of the right to appoint a guardian for a person *non compos mentis*. As in the instant case, the proceedings for the appointment of a guardian were wholly *ex parte*. The court said:

''I think it is a fundamental principle of justice, essential to the rights of every man, that he shall have notice of any judicial proceeding that is about to be had for the purpose of divesting him of his property or the control of it, that he may appear and show to them who sit in judgment on his rights that he has not lost them by the commission of a crime; nor should those rights be taken from him by reason of any misfortune.''

The same rule has been recognized by the Supreme Court of Alabama, in *Eslava v. Lepretre*, 21 Ala. 504; *Moody v. Bibb*, 50 Ala. 245; and *Molton v. Henderson*, 62 Ala. 426.

In *Eddy v. People*, 15 Ill. 386, the Supreme Court of Illinois reviewed a question involving the determination of the fact of lunacy and the appointment of a conservator of the estate of the lunatic. The court said:

''The statute provides that, whenéver a lunatic has any estate, the judge of the circuit court of the county in which such lunatic lives shall, on the application of any creditor or relative of the lunatic, order a jury to be summoned, to inquire whether such person be lunatic; and if the jury shall so find, the judge shall appoint a conservator, etc. The statute is silent upon the subject of notice, and the question is, whether it is regular to proceed without notice to the supposed lunatic. We are clearly of opinion that, upon the general principles of law, the supposed lunatic is entitled to reasonable notice.''

In *Martin v. Motsinger*, 130 Ind. 555 (30 N. E. 523), the court had under consideration a proceeding under the statute of that state for the appointment of a guardian of a person alleged to be of unsound mind. The court said:

''The appellant insists that jurisdiction of her person could

only be acquired by notice, and the record, showing affirmatively that there was no notice, affirmatively shows want of jurisdiction. · The statute providing for proceedings of this character does not, in terms, require notice, and the proceedings may be regular and valid, without the service of any notice upon the party. * * * But, while this is true, and while there may be a valid inquest and judgment in such cases without notice, when the party is present, it is otherwise when he is not present and is not represented by someone authorized to appear for him. While the statute does not in terms provide for notice, the proceedings are of such a character that they cannot be *ex parte* and be valid. If the statute was to be construed as authorizing proceedings of an ex-parte character, it would be, to that extent, in conflict with the Constitution of the United States, and void. The proceeding, if successful, results in the deprivation of both liberty and property. The guardian, when appointed, is guardian of both person and estate; and, under the Constitution, no man can be deprived of either liberty or property without due process of law. He is entitled to his day in court. When he is actually brought in, or voluntarily appears, he has the right guaranteed him by the Constitution. If, however, he is not brought in, and the court, after an ex-parte hearing, and without notice to him of any character, and without his knowledge, proceeds to hear and determine the matter, it cannot be said that he has had his day in court.''

In *Mason v. Beazley*, 10 Ky. Law Rep. 154, it is said:

''No person, even though the court may be of the opinion that such person is incompetent on account of imbecility or otherwise, should be deprived of the right to manage and control his or her property, without being offered an opportunity to be heard.''

In *Stewart v. Taylor*, 111 Ky. 247 (63 S. W. 783), the court of appeals of Kentucky reviewed the authorities to some extent, and held that, where the statute is silent on the question of notice, the alleged incompetent is entitled to notice of the pendency of the proceedings, and to have reasonable opportunity afforded him to defend. The court said:

''Otherwise, unscrupulous persons might go into court, and

have one who is perfectly sane adjudged of unsound mind, and for a time take his property from his control.''

In *Allis v. Morton,* 4 Gray (Mass.) 63, where a guardian of an incompetent was appointed without notice, the court said:

''And if the statutes were wholly silent on the subject, the benignant principles of the common law would require the notice to be given.''

In *Hutchins v. Johnson,* 12 Conn. 376, the Supreme Court of Errors of that state, in discussing the question of the appointment of a conservator of the property of a party *non compos,* said:

''Notice of such a proceeding, so important to the subject, is required, by the fundamental principles of justice.''

In *Holman v. Holman,* 80 Me. 139, the court had under consideration the appointment of a guardian of an insane person. The court said:

''It is true that there is no express statute provision requiring such notice. But it is a well settled rule of the common law that, when an adjudication is to be made which will seriously affect the rights of a person, he should be notified, and have an opportunity to be heard. Necessity creates some exceptions to the rule.''

See, also, *Coolidge v. Allen,* 82 Me. 23.

In *Supreme Council v. Nicholson,* 104 Md. 472 (65 Atl. 320), the court of appeals of Maryland reviewed the authorities, and said:

''It is difficult to overestimate the gravity and seriousness of the consequences to the citizen which necessarily flow from an adjudication declaring him to be *non compos mentis.* He is divested of his property, and may be restrained of his liberty, and incarcerated in an insane asylum. To assert that this can be done, under the general principles of American law, without notice, or opportunity to be heard, is shocking to one's sense of justice and humanity. No such general rule of procedure can be recognized by the American courts.''

In *In re Wellman,* 3 Kan. App. 100 (45 Pac. 726), the court of appeals of Kansas reviewed a statute of that state in a similar proceeding, and held:

''Notice and opportunity to be heard lie at the foundation of

all judicial procedure. They are fundamental principles of justice, which cannot be ignored. Without them, no citizen would be safe from the machinations of secret tribunals, and the most sane member of the community might be adjudged insane, and landed in a madhouse.''

In *In re Allen,* 82 Vt. 365 (73 Atl. 1078), the cases are reviewed, and it is held that the statutes of that state should be construed in the light of the requirements of the principle of the common law; and that, so construed, the alleged insane person is entitled by law to proper notice of such proceedings and to an opportunity to be present and defend.

In *Jones v. Learned,* 17 Colo. App. 76 (66 Pac. 1071), the Supreme Court of Colorado, in considering a similar statute, said:

''This section did not, in terms, require notice to be served upon the lunatic. The authorities, however, are as one that such notice is necessary, irrespective of statute.''

A leading case on the subject is *Evans v. Johnson,* 39 W. Va. 299, wherein the court reviewed the appointment of a guardian of an alleged incompetent without notice. The court said:

''It lies at the fountain of justice in all legal proceedings that the person to be affected have notice of such proceedings. As such an appointment takes from the person the possession and control of his property, and even his freedom of person, and commits his property, his person, his liberty to another, stamps him with the stigma of insanity, and degrades him in public estimation, no more important order touching a man can be made, short of conviction of infamous crime. Will it be said, in answer to this, that he is insane, and that notice to an insane man will do him no good? The reply is that his insanity is the very question to be tried, and he the only party interested in the issue. In many cases, if notice be given him, he will be prompt to attend, and in person be the unanswerable witness of his sanity. In some cases, if notice be not given him, those interested in using his property or robbing him of it will effectuate a corrupt plan. Almost as well might we convict a man of crime without notice. There is abundant authority for this position. Even though the statute be silent regarding notice, as ours is in the matter of appointment of committees by the county courts, though the statute

providing for the appointment by circuit court requires notice, yet the common law steps in and requires it."

In *Dozier, Ex Parte*, 4 Baxt. (Tenn.) 81, the court said:

"No provision is made for notice and copy of the petition to the alleged lunatic when an application is made to the county court, but when the application is made to the chancery court, the procedure cannot be inaugurated without such notice, and service of a copy of the petition. It was never intended by the legislature that so important a proceeding as that of declaring a party a lunatic, and taking charge of his person and his estate, should be consummated without personal notice."

It is contended by the counsel for respondent that the statute in question has been in the Code for many years, and that it has been the universal custom and practice of judges throughout the state, during all of that time, to appoint temporary guardians upon the presentation of a petition, and without any notice. A similar situation arose and a similar argument was presented to the Supreme Court of Missouri in *Hunt v. Searcy*, 167 Mo. 158 (67 S. W. 206), in which the court said:

"It is too clear for argument that this qualification and attempted authority for depriving the accused of his liberty or property without notice violates both the state and Federal Constitutions, and does not constitute 'due process of law.' But one reason can be suggested for not serving the person to be tried with notice, and that is that, as he is insane, a notice to him would be useless and meaningless. This argument begs the question; for the issue to be tried is whether he is insane or not; and to fail to give him notice for this reason is to forestall the very purpose of the inquest. But even if he be a raving maniac, he can appear by attorney or through his friends, and see that a proper person is appointed guardian, or that a proper care is given to his property and to his person. * * * It will not do to say that, in the 57 years that these provisions not requiring notice have been on the statute books, no instance is recorded of any sane person being so adjudged and deprived of his liberty or property, and that instances of such outrages are found only in highly colored and improbable stories in works of fiction. * * * It would be a travesty upon justice, worthy to be dramatized, to hold that a sane man is entitled to notice before his

liberty or property can be taken from him, but that this can be done in a probate court in a proceeding to declare the person so to be treated to be insane, or to declare that the protection of the Constitution does not extend to a person who is *charged* to be insane, and that, upon such an ex-parte charge, in an ex-parte proceeding, his liberty and property can be taken away from him.''

With little conflict, the authorities sustain the general propositions announced in the foregoing cases, in actions of this kind. We cannot, of course, in this proceeding, review the facts alleged in the petition presented to respondent. It presents the not altogether unusual situation of a man of advanced years, who has been twice married and has children by both marriages. One son, it appears, has been unfortunate financially, and the father has apparently favored him by large assistance. The alleged incompetent appears to own and manage a large farm, and to have property worth $200,000. Without any notice or any appearance in his behalf, this man has been summarily placed under guardianship, and his entire property turned over to a guardian. As before stated, we cannot and do not pass upon the question of the advisability, necessity, or propriety of having a guardian appointed for the person or property of the petitioner. We are constrained to hold, however, that such appointment cannot legally be made in any case until after notice to the alleged incompetent, and until he has a right to be heard in his own behalf.

The basic guaranty of our fundamental law is that no man shall be deprived of life, liberty, or property, without due process of law. This is of the very genius of our institutions. It has come down to us from the days of the Magna Charta. It is among our choice heritages. It should not be lightly cast aside, even under a claim of necessity. If such proceedings can be had without any notice, the door is opened wide for the machinations of the designing or the malicious. Under such a rule, no citizen can rest in security of either person or property; for, utterly unbeknown to him, and without opportunity to be heard, he may suddenly discover that he has been placed under guardianship as an incompetent, and his property turned over to a conservator. Such a rule is repulsive to our American ideals of justice, and antagonistic to the fundamental rights guaranteed to the in-

dividual citizen. It would contravene those essential principles which a liberty-loving and law-respecting people cherish and hold most sacred. It is argued by counsel that the appointment of guardians in such cases, without notice, has been a universal custom in this state. If such be the case, "it is a custom more honored in the breach than in the observance." Neither age nor custom can make valid that which is essentially and fundamentally wrong.

This case is an original proceeding in certiorari, to test the legality of the action of the respondent, as judge, in appointing a guardian of the property of the petitioner, without the service on petitioner of any notice of the proceedings. Limiting our decision expressly to that question, we hold that the respondent, as judge, acted illegally in appointing a guardian for the property of the petitioner without reasonable notice to petitioner of said proceedings.

Said appointment is, therefore, void, and the order complained of is—*Annulled.*

All the justices concur.