OLDHAM ET AL., ADMRS., *v.* WINGET, GDN.

(Decided December 14, 1933.)

*Mr. Charles C. Hall* and *Mr. Taylor Cummins,* for plaintiffs in error.

*Mr. Leo M. Winget* and *Mr. Urban H. Doorley,* for defendant in error.

BLOSSER, P. J.   The plaintiffs in error, Harry Oldham and Robert Oldham, administrators, were defendants, and defendant in error, Leo M. Winget, guardian of Albert L. Bruner, an insane person, was plaintiff in the Court of Common Pleas, and we will refer to the parties as they were in that court.   The action was on a guardian's bond, and is the second action prosecuted on the same bond.   It arises by reason of the fact that David Oldham, now deceased, was one of the sureties on the bond of John M. Bruner, as guardian of Albert L. Bruner, who, on July 29, 1901, was adjudged insane by the Probate Court and has since that time been confined to the state hospital for the insane.

A statement of the facts is necessary to an understanding of the case.   On February 19, 1904, John M. Bruner was appointed and qualified as guardian of Albert L. Bruner, insane.   His bond in the sum of $1,000 was signed by John M. Bruner, as principal, and by Margaret A. Bruner and David Oldham, as sureties.   He filed four accounts of such guardianship, the fourth account showing a balance due the ward.   John M. Bruner died January 3, 1923, and on April 7, 1930, Urban H. Doorley was appointed administrator of his estate, and as such administrator Doorley filed an account of the transactions of his intestate as such guardian; and on May 31, 1930, the Probate Court found there was a balance in the hands of said guardian due his ward in the sum of $1,410.21, which amount the guardian was ordered to pay over according to law.

On April 23, 1930, Leo M. Winget was appointed guardian of Albert L. Bruner, insane.   Urban H.

Doorley, administrator, in the administration of the estate of John M. Bruner, deceased, after making certain minor payments to the guardian, had left unpaid and due said guardian the sum of $1,379.18. In August, 1915, Margaret A. Bruner, one of the sureties on the bond of John M. Bruner, guardian, died intestate, without leaving any property or estate. On July 2, 1926, David Oldham, one of the sureties on the bond of John M. Bruner, guardian, died intestate, and on July 14, 1926, Harry Oldham and Robert Oldham were appointed and qualified as administrators of his estate.

On November 19, 1930, Leo M. Winget, guardian of Albert L. Bruner, filed his suit No. 10586 in the Court of Common Pleas against the administrators of the estate of David Oldham to collect on the bond given by John M. Bruner as guardian of Albert L. Bruner, insane. The relief sought was based on a finding of the Probate Court on April 23, 1930, with reference to the amount of money owing the ward from the estate of John M. Bruner, deceased. The Court of Common Pleas in passing on a demurrer in that case held in a written opinion that the appointment of Leo M. Winget as guardian, made April 23, 1930, was void for the reason that no written notice was given to the ward as required by Section 10989-1, General Code, and as this provision with reference to notice to the ward was not complied with the court did not have jurisdiction. Thereupon, without any judgment being rendered, Leo M. Winget, as guardian, on January 26, 1932, voluntarily dismissed his case without prejudice and without record, to which the defendants objected.

The record discloses that on February 26, 1932, there was placed on the journal of the Probate Court an entry to the effect that the court of its own motion found that when Leo M. Winget, under date of April 23, 1930, made application and was appointed guardian of Albert L. Bruner, no notice was served on said

Albert L. Bruner, and it was therefore ordered that he render an account within thirty days or within that time make an application for reappointment as guardian. On the same day he acknowledged receipt of the order of the court. Thereupon on March 5, 1932, Leo M. Winget was again appointed and qualified as guardian of Albert L. Bruner, insane, and on April 2, 1932, filed his action No. 10815 against the administrators of the estate of David Oldham, deceased, to collect on the bond of John M. Bruner, guardian of Albert L. Bruner, insane. The case was heard both on demurrer and on the merits by Hon. Joseph D. Barnes, Judge, without the intervention of a jury. The defendants asserted that the action was not brought within the time limited for the commencement of such actions; that the statute of limitations began to run on April 23, 1930, the date of the first appointment of the guardian, or not later than May 31, 1930, the date of the finding of the Probate Court, and the action was therefore barred by old Section 10746, General Code, new Section 10509-144, General Code. The court held against the defendants on the theory that the first appointment of the guardian was void for want of notice, but that his second appointment was valid and the action was brought within the proper time. The court on February 6, 1933, found for the plaintiff in the sum of $1,000, being the full amount of the penalty stated in the bond. A motion for a new trial was filed on February 9, 1933, the day following the resignation of Judge Barnes as judge of the Court of Common Pleas. The motion for a new trial was then submitted to Hon. W. T. Copeland, Judge of the Court of Common Pleas of Auglaize county, who had been designated to hear the motion. The motion for a new trial was overruled by Judge Copeland and judgment was rendered for the plaintiff on the finding made by Judge Barnes.

I. One of the grounds for reversal urged in this proceeding is that the motion for a new trial should have been granted as a matter of course. The reported opinions of two trial courts in Ohio are not in harmony as to the right of a succeeding judge under such circumstances. We approve the conclusion reached by Yaple, J., in *Chesapeake & Hocking Ry. Co.* v. *Orr*, 27 N. P. (N. S.), 393. In this case there was a complete transcript of the evidence. The chief issue was one of law rather than a dispute as to the facts. Under such circumstances the succeeding judge can properly pass on the motion for a new trial. 20 Ruling Case Law, 301; 46 Corpus Juris, 288. There was no error in Judge Copeland passing on the motion for a new trial, and in not granting the motion as a matter of course.

II. One of the principal grounds for reversal asserted is that the action is barred by the statute of limitations. To correctly decide this question it is necessary to determine if the first appointment of Leo M. Winget as guardian, made on April 23, 1930, was void for the reason that the insane person was not served with written notice as required by Section 10989-1, General Code, or is a mere irregularity not affecting the jurisdiction of the court, which irregularity, in order to affect the proceedings, must be attacked in a direct proceeding and not collaterally.

The cause of action accrued not later than May 31, 1930, the date of the finding of the Probate Court of the amount due the ward from the former guardian. *Newton* v. *Hammond*, 38 Ohio St., 430. As this suit, No. 10815, was not filed until April 2, 1932, the action was barred by Section 10509-144, General Code. If the first appointment was void, then the second appointment was valid, and as the action was begun on April 2, 1932, it is not barred by the provisions of Section 10509-144, General Code; but if the first appointment was legal, then the action is barred by the statute.

The Probate Court must have been uncertain as to the legal effect of the failure to give notice to the insane person when the first appointment was made, for it will be noted that when he made the order on his own motion on February 26, 1932, he did not attempt to vacate and set aside the first appointment of Leo M. Winget, but merely found that no notice was given the insane person, and, in effect, requested that he should apply for reappointment.

The authorities are in conflict as to whether or not notice to the insane person is necessary in order to give the Probate Court jurisdiction. Section 10989-1, General Code, requires that before the appointment is made written notice shall be given. The statute, however, does not say in express terms that if notice is not given the court does not have jurisdiction. Whatever the rule may be in some of the other states, it seems to be settled in Ohio that notice to the alleged insane person is not jurisdictional, and that failure to give notice is a mere irregularity which cannot be raised collaterally, but must be complained of in a direct proceeding to set aside the appointment or by bringing an error proceeding to reverse it. In *Jordan* v. *Dickson,* 10 Dec. Rep., 332, 20 W. L. B., 360, Judge Taft, later Chief Justice of the Supreme Court of the United States, very clearly announced this rule. To the same effect are *Heckman* v. *Adams,* 50 Ohio St., 305, 34 N. E., 155; *Shroyer* v. *Richmond & Staley,* 16 Ohio St., 455; *Kennedy* v. *Walcutt,* 118 Ohio St., 442, 161 N. E., 336; 20 Ohio Jurisprudence, 271.

In those jurisdictions where notice is held to be jurisdictional, it is based upon the proposition that notice must be given in the first instance to the insane person to determine his mental condition for the purpose of taking charge of his person or property or both. *McKinstry* v. *Dewey,* 192 Iowa, 753, 185 N. W., 565, 23 A. L. R., 594. That situation does not obtain

here, for the incompetent person had been declared insane in 1901 and no question is made as to that adjudication. As he has been in the asylum continuously since that time, there is less reason for notice on the application for the appointment of a guardian in succession, and the failure to give it is merely technical. No collateral attack can be made on the appointment of a guardian of an insane person made without notice, especially when the mental condition of the ward had previously been determined and had existed for a long period prior to the appointment.

The appointment of April 23, 1930, was not a nullity merely for the reason that no notice was given the insane person, and it follows that the guardian cannot collaterally attack his own appointment made at that time.

III. As Judge Barnes, in passing on a demurrer in case No. 10586, decided against the plaintiff, defendant in error here, it is asserted that the plaintiff failed otherwise than upon the merits, and that thereafter he was entitled to bring his action No. 10815 within one year after the failure of the first suit, by virtue of the saving provisions of Section 11233, General Code.

The sole authority cited is *Belpash* v. *Emerine,* 119 Ohio St., 226, 162 N. E., 799. It will be noted, however, that in that case there was no voluntary dismissal of the case without prejudice by the plaintiff, but final judgment was entered by the court against the plaintiff upon sustaining the demurrer. See same case, *Emerine* v. *Belpash,* 23 Ohio App., 311, 155 N. E., 249. In this case no judgment was entered upon the ruling on the demurrer, but the action of the plaintiff in dismissing the case was purely voluntary. In deciding *Belpash* v. *Emerine* no mention is made of the earlier decision of the Supreme Court in *Siegfried* v. *New York, Lake Erie & Western Rd. Co.,* 50 Ohio St., 294, 34 N. E., 331, the syllabus of which is as follows: ''Where an action which has been commenced in due time, is

dismissed by the plaintiff after the time limited for the commencement of such action has expired, a new action for the same cause, thereafter commenced, is barred, though commenced within one year after the dismissal of the former action. Such dismissal is not a failure in the action, within the purview of Section 4991, of the Revised Statutes.''

In the later case of *Buehrer* v. *Provident Mutual Life Ins. Co.*, 123 Ohio St., 264, 175 N. E., 25, the principle announced in *Siegfried* v. *Railroad Co.* is reiterated, and that case is cited in the syllabus as authority for the proposition, and in the course of the opinion, on page 272, it is said ''nor has the *Siegfried case, supra*, ever been overruled.''

Counsel for the plaintiff stress the fact that the trial court's ruling on the demurrer was the impelling force which brought about the dismissal of the first case, and for that reason this case is to be distinguished from some of the cases cited. This distinction is not recognized in *Buehrer* v. *Life Insurance Co., supra*.

We think that the dismissal of the case by the plaintiff on his own motion was not a failure within the meaning of Section 11233, General Code. *White, Admx.,* v. *Cleveland Foundry Co.*, 24 C. C. (N. S.), 180, 34 C. D., 528; 25 Ohio Jurisprudence, 583.

IV. It is asserted by the plaintiff that his dismissal of case No. 10586 was brought about by the effort of counsel for the plaintiffs in error, such effort consisting in filing an answer in that case collaterally attacking the appointment of the guardian, the demurrer to that defense being erroneously overruled by Judge Barnes, and that they cannot now take advantage of the error which they induced the court to commit, and for which they were responsible. It has been said that a party cannot take advantage of invited error. In a proper case this rule should be invoked, but we do not think it should apply in this case. It was not invoked in

*Buehrer* v. *Life Insurance Co., supra,* where a similar situation obtained.

As the action is barred by the statute of limitations, for the reasons above stated the judgment is reversed. Proceeding to render the judgment which the trial court should have rendered, final judgment is rendered for the plaintiffs in error.

*Judgment reversed.*

MIDDLETON and MAUCK, JJ., concur.

Judges of the Fourth Appellate District sitting by designation in the Second Appellate District.